STATE *ex rel.* LOLA M. WOODS

*v.*

STATE ROAD COMMISSION OF WEST VIRGINIA, *et al.*

(No. 12311)

Submitted April 28, 1964.          Decided May 19, 1964.

556

*Mahan, Higgins, Thrift & Graney, R. J. Thrift, Jr.,* for relator.

*Anthony G. Halkias, Benjamin A. Ritchie,* for respondents.

CALHOUN, JUDGE:

By this original proceeding in mandamus, Lola M. Woods, the petitioner, seeks to require Burl A. Sawyers, state road commissioner, to institute a proceeding in eminent domain to condemn for public use her "right to direct access" to Woodlawn Avenue from real estate owned by her in the City of Oak Hill in Fayette County. The case has been submitted to the Court for decision upon the petition; an answer and a demurrer to the petition; the testimony of one witness; a written stipulation of facts; and certain exhibits, consisting of plats or maps and photographs. The pertinent facts thus presented are without material dispute.

The petitioner is the owner of certain real estate, consisting of a house and lot, situated within the City of Oak Hill. The front of the lot abuts on U. S. Route 21, a part of the state highway system, also known as Main Street. On the eastern side, the lot abuts on a paved public street known as Minden Road. From exhibits filed in behalf of the petitioner, it appears that her lot may abut on an alley

at the rear side of the lot. Until recently, the lot, on its entire western side, abutted on a paved public street known as Woodlawn Avenue.

In connection with a project for the improvement of U. S. Route 21, the state road commission moved a portion of Woodlawn Avenue westward from the petitioner's lot for a distance of approximately 125 feet at the farthest point. From U. S. Route 21 or Main Street, Woodlawn Avenue as relocated follows that which, in quite general terms, may be referred to as a semicircular course until it enters the original location of Woodlawn Avenue near the rear of the petitioner's lot. Again speaking in quite general terms, it may be said that the area between the petitioner's lot and Woodlawn Avenue as relocated is in the shape of a half moon. This area, when the construction is complete, will be covered with grass.

The petitioner's lot formerly abutted on Woodlawn Avenue for its entire depth of 126 feet. The lot now abuts on Woodlawn Avenue as relocated for a distance of 26 feet at the rear of the lot. Within that 26-foot area, the petitioner has a driveway, ten feet in width, leading from Woodlawn Avenue to a garage in the rear of her house. In connection with the construction, the state road commission has provided a 20-foot break in the concrete curb in order to permit the petitioner to use the driveway to her lot and to her garage. The record does not indicate that vehicular access to the plaintiff's lot was ever had or asserted at any other location than by this driveway.

None of the streets on which the petitioner's lot abuts is a limited access or controlled access highway. The petitioner's rights of direct access to Main Street and to Minden Road remain unaffected by the construction. Her lot is higher than Main Street and Minden Road. For this reason, vehicular access to the lot from either of these two streets would involve some inconvenience. Woodlawn Avenue originally intersected Main Street in or near a curve in Main Street and it is apparent that the point of intersection was moved westward in the interest of greater safety in the flow of traffic.

By way of defense, the respondents contend that, after completion of the construction project, the petitioner will have the same or an equivalent means of access; that they have not deprived her of or denied her a right of direct access to Woodlawn Avenue or to Main Street; that the construction project, when complete, will not have caused any diminution in the value of her real estate; that the relocation of Woodlawn Avenue resulted from a legitimate exercise of the police power and does not give rise to any right to compensation; and that, in any event, this proceeding is premature because of the fact that the project has not been completed.

The state road commission is not required to proceed to final award or judgment in an eminent domain proceeding until "after a reasonable time has elapsed for completion of the work upon the particular property * * *." Code, 1931, 54-2-14, as amended; *State ex rel. Queen* v. *Sawyers,* 148 W. Va. 130, 133 S. E. 2d 257, 259. From the record in this case it appears that nothing remains to be done on the construction project as it relates to the petitioner's real estate except the planting of grass in the area between her lot and Woodlawn Avenue as relocated. We cannot say, therefore, that the present proceeding is premature.

One whose real estate abuts on a public street or highway has two distinct kinds of rights. One is a public right which he enjoys in common with all other citizens. He also has certain private rights which arise from his ownership of property contiguous to the street or highway, and which are not common to the public generally. These include rights of access, view, light, air and lateral support. Such rights are not absolute, but are subject to the power of the state or municipality to control and regulate them reasonably in the public interest. 64 C.J.S., Municipal Corporation, Section 1701, page 96; 39 C.J.S., Highways, Section 141, page 1079; 25 Am. Jur., Highways, Section 152, page 446.

The right of access to and from a public street or highway is a property right of which the owner may not be

deprived without just compensation. *State ex rel. Ashworth* v. *The State Road Commission et al.,* 147 W. Va. 430, pt. 1 syl., 128 S. E. 2d 471; *State ex rel. Wiley* v. *State Road Commission et al.,* 148 W. Va. 76, pt. 1 syl., 133 S. E. 2d 113. "While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway; if he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint." 39 C.J.S., Highways, Section 141, page 1081. To the same effect see *Mueller* v. *New Jersey Highway Authority,* 59 N.J. Super., 583, 158 A. 2d 343; *Iowa State Highway Commission* v. *Smith,* 248 Iowa 869, 82 N. W. 2d 755; *People* v. *Murray,* 172 Cal. (CA 2d) 219, 342 P. 2d 485; *Smith* v. *State Highway Commission,* 185 Kan. 445, 346 P. 2d 259; *State of Indiana* v. *Ensley et al.,* 240 Ind. 472, 164 N. E. 2d 342; *Lewis* v. *Lorenz,* 144 Colo. 23, 354 P. 2d 1008.

A landowner, by mandamus, may require the state road commissioner to institute a proceeding in eminent domain to ascertain just compensation for land taken or damaged for public highway purposes. *State ex rel. Cutlip* v. *Sawyers,* 147 W. Va. 687, 130 S. E. 2d 345; *State ex rel. French* v. *State Road Commission,* 147 W. Va. 619, 129 S. E. 2d 831. It is essential that the landowner show a clear legal right to the relief sought by him in the mandamus proceeding; "and a writ of mandamus will not be awarded unless it appears that the highway construction has resulted in probable damage to such private property of such nature that compensation therefor may be properly ascertained in an eminent domain proceeding." *State ex rel. Queen* v. *Sawyers,* 148 W. Va. 130, pt. 1 syl., 133 S. E. 2d 257.

Relocation of a street or highway may diminish the value of abutting property but it does not necessarily follow that the owner is entitled to be compensated therefor. *Heavner* v. *State Road Commission,* 118 W. Va. 630, 191 S. E. 574; *Gardner* v. *Bailey,* 128 W. Va. 331, 36 S. E. 2d 215. We have not been cited any precedent or author-

ity for the proposition that one has a legal right to have his property merely abut on a public street or highway, so long as he has not been denied a right of reasonable access from his property to a public street or highway. "If a change in the grade of a public road impairs the means of access to property abutting thereon, but the impairment has wrought no change in the true and actual value of the land considered in its entirety, the plaintiff may not recover damages therefor, notwithstanding the inconvenience of access and the expenditure necessary to restore a way of approach to the land and residences thereon." *Compton* v. *County Court of Marshall County*, 83 W. Va. 745, pt. 3 syl., 99 S. E. 85.

An annotation in 73 A.L.R. 2d 652 sustains the principle that a landowner's right of access to a public street or highway may be regulated and curtailed to a reasonable degree in the promotion of the safety and general welfare of the public. *Wood* v. *City of Richmond*, 148 Va. 400, 138 S. E. 560, involved a corner lot which abutted on two streets. The court held that municipal authorities acted reasonably in denying all right of access from his lot to one of the two streets.

The second point of the syllabus of *State ex rel. Merritt* v. *Linzell*, 163 Ohio St. 97, 126 N. E. 2d 53, is as follows: "Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property and, where a portion of a highway is relocated and property abutting on the old highway does not abut on the relocated portion and the owner has the same means of ingress and egress to and from such property, there is no legal impairment of such right." See also *Slicker* v. *Board of Education*, 25 Ohio 2d 75, 187 N. E. 2d 392; *New Way Family Laundry, Inc.* v. *City of Toledo*, 171 Ohio St. 242, 168 N. E. 2d 885. In *Richmond* v. *City of Hinton*, 117 W. Va. 223, 227, 185 S. E. 411, 412, the Court stated: "And the appurtenant right of access is not affected within the meaning of the guaranty against public encroachment so long as a convenient way of ingress and egress remains. The Constitution does not

undertake to guarantee to a property owner the public maintenance of the most convenient route to his door. The law will not permit him to be cut off from the public thoroughfares, but he must content himself with such route for outlet as the regularly constituted public authority may deem most compatible with the public welfare. When he acquires city property, he does so in tacit recognition of these principles."

This case is quite different from *State ex rel. Ashworth* v. *The State Road Commission et al.,* 147 W. Va. 430, 128 S. E. 2d 471, which involved a controlled access highway and a complete denial to the property owner of all means of vehicular access to his real estate. There has been no complete denial of access in this case. Indeed, as we have stated previously, it does not appear that the landowner has asserted and been denied a right of access from a public highway at any point on her property. Apparently her property still abuts on the state road commission right of way and on Woodlawn Avenue along the entire western side of her lot.

Prior to the commencement of this construction, Woodlawn Avenue was a public street maintained by the city. It does not appear from the record in what exact way or by what authority the city abandoned any portion of Woodlawn Avenue upon which petitioner's lot had previously abutted. Possibly the state road commissioner relocated the street "with the consent of the governing body" of the municipality, pursuant to Code, 1931, 17-4-26, as amended. It does not appear from the record that there was any formal closing or abandonment by the city of any portion of Woodlawn Avenue adjacent to the petitioner's lot. It appears reasonable to assert, so far as the record discloses, that if there was an abandonment of a portion of Woodlawn Avenue on which the petitioner's property abuts, such abandonment was by the city, even though the state constructed Woodlawn Avenue on a new location for reasons deemed to have been in the public interest.

For reasons stated, we are of the opinion that the petitioner's rights of access to her property have not been

unreasonably regulated or curtailed in the public interest; and that such rights have not been materially or substantially affected. It is true that Aubrey Halstead, the witness who testified for the petitioner, stated that her property is less valuable because it is no longer a corner lot and because it fronts only on Main Street. We are unable to understand that such statements are in accord with the admitted facts. In another portion of his testimony, he admitted that the lot still corners on Main Street and Minden Road. He testified also that, prior to the construction, the petitioner's property could have been divided into two lots fronting on Woodlawn Avenue. This testimony was objected to on the ground that it was highly speculative and because there was no showing that the petitioner desired to divide her lot in this manner. The respondents contend with reason that she still would have reasonable means of access to both lots if her property were divided into two lots. The witness testified that the only basis for his opinion that the value of the petitioner's lot has been diminished is that he "would rather have an access on a side street than on a main street."

For reasons stated, the Court holds that the petitioner has not shown a clear legal right to relief by mandamus and, therefore, the writ prayed for is denied.

*Writ denied.*