718 S.E.2d 497

**Robert A. DOERING, et al., Petitioners Below, Appellants**

v.

**CITY OF RONCEVERTE and County Commission of Greenbrier County, Respondents Below, Appellees.**

and

**West Virginia Farm Properties, LLC, Intervenor Below, Appellee.**

No. 35553.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2011.

Decided Jan. 20, 2011.

148

William D. Turner, Esq., Pyles & Turner, Lewisburg, WV, for Appellants Robert A. Doering, et al.

Aaron C. Ambler, Esq., Ambler & Dotson, Lewisburg, WV, for Appellee City of Ronceverte.

Jesse O. Guills, Jr., Esq., Law Office of Jesse O. Guills, Jr., Lewisburg, WV, for Appellee West Virginia Farm Properties, LLC.

KETCHUM, Justice:

The appellants, Robert A. Doering, *et al.*, voters and freeholders within or near the City of Ronceverte, West Virginia, appeal from the August 24, 2009, and October 16, 2009, orders of the Circuit Court of Greenbrier County, holding that they lack standing to challenge City of Ronceverte Ordinance no.2009–01 annexing a tract of land consisting of approximately 295 acres known as the Stoney Glen Subdivision. The Subdivision is located four miles south of the City. To facilitate access to the Subdivision, the Ordinance also annexed three intervening roadways. The appellants are separated into two groups: (1) those living within the City prior to the annexation, known as the Ronceverte Group and (2) those living in the unincorporated Organ Cave community near the Subdivision, known as the Organ Cave Group. In the proceedings below, the appellants sought injunctive relief and an order invalidating the Ordinance.

The City of Ronceverte and West Virginia Farm Properties, LLC, the Virginia-based development company of the Stoney Glen Subdivision, ask this Court to affirm the August 24, 2009, and October 16, 2009, orders which dismissed the action. Although named as a party defendant and appellee, the County Commission of Greenbrier County has taken no position in this litigation.[1]

Upon review of the argument and briefs of counsel, and a careful examination of the record, this Court is of the opinion that the dismissal of the action for lack of standing constitutes reversible error. As discussed below, this Court concludes that standing to file the action existed because certain appellants in the Organ Cave Group are voters and freeholders of the annexed territory yet were unlawfully excluded from the annexation process in violation of the controlling

statute, *W.Va.Code*, 8–6–4 [2001]. As a result of the exclusion, fatal to the annexation ordinance under the facts herein, the petitions for annexation and Ordinance no.2009–01 were void *ab initio.*

Consequently, although new petitions and an ordinance for the annexation of the territory in question are not precluded, a remand of this action, which solely concerns City of Ronceverte Ordinance no.2009–01, is unnecessary.

## I.

### Factual Background

By petitions dated September 22, 2008, and December 30, 2008, West Virginia Farm Properties, LLC, a Virginia-based real estate development company, petitioned the City of Ronceverte to annex a 293 acre tract known as the Stoney Glen Subdivision four miles south of the City and a 0.04 acre water pump station two miles south of the City. By separate petition dated September 22, 2008, James L. and Michelle H. Bayless, Jr., living in Japan, petitioned the City to annex their 1.95 acre lot located within the Subdivision. The Baylesses were freeholders of the only lot sold in the ongoing development of the Subdivision. None of the petitions expressly referred to the three intervening roads connecting the City of Ronceverte and the Stoney Glen Subdivision, although the public notice of the proposed annexation included the roads.

During the time-frame of this matter, West Virginia Code, chapter 8, article 6, addressing municipal annexation, provided three methods for a city to annex territory: (1) *W.Va.Code*, 8–6–2 [2003], requiring an election by voters; (2) *W.Va.Code*, 8–6–4 [2001], the method employed by West Virginia Farm Properties and the Baylesses in this action, authorizing annexation without an election; and (3) *W.Va.Code*, 8–6–5 [2001], providing for annexation by minor boundary

1. The appellants state that, inasmuch as the acts of the County Commission in this matter were ministerial, no discretionary wrongdoing by the Commission occurred. *See,* syl. pt. 5, *In the Matter of the Proposed Annexation to the City of Morgantown,* 159 W.Va. 788, 226 S.E.2d 900

(1976); syl. pt. 6, *State ex rel. City of Charles Town v. County Commission of Jefferson County,* 221 W.Va. 317, 655 S.E.2d 63 (2007) (both cases indicating that, ordinarily, a county commission has no interest in municipal annexation matters).

adjustment. *In re Petition of the City of Beckley,* 194 W.Va. 423, 426, 460 S.E.2d 669, 672 (1995).

As *W.Va.Code,* 8–6–4 [2001], concerning "annexation without an election" states, in part:

(a) The governing body of a municipality may, by ordinance, provide for the annexation of additional territory without ordering a vote on the question if: (1) A majority of the qualified voters of the additional territory file with the governing body a petition to be annexed; and (2) a majority of all freeholders of the additional territory, whether they reside or have a place of business therein or not, file with the governing body a petition to be annexed.

(b) For purposes of this section, the term "qualified voter of the additional territory" includes firms and corporations in the additional territory regardless of whether the firm or corporation is a freeholder. \* \* \*

(c) The determination that the requisite number of petitioners have filed the required petitions shall be reviewable by the circuit court of the county in which the municipality or the major portion of the territory thereof, including the area proposed to be annexed is located.

Following a public hearing, the Ronceverte City Counsel, on March 23, 2009, adopted Ordinance no.2009–01 annexing the Stoney Glen Subdivision which consisted of the 293 acres owned by West Virginia Farm Proper-

ties and the 1.95 acre lot owned by James L. and Michelle H. Bayless, Jr. Also annexed was the 0.04 acres owned by West Virginia Farm Properties located two miles south of Ronceverte. The Ordinance noted that the Stoney Glen Subdivision is four miles south of Ronceverte.

In addition, the Ordinance stated that the territory to be annexed "requires the annexation of West Virginia Division of Highways roadway to be contiguous to the City of Ronceverte and for access to the Stoney Glen subdivision." Accordingly, portions of the following roadways between the City of Ronceverte and the Subdivision were annexed: (1) U.S. Highway 219, (2) Morgan Hollow Road—Route 65, and (3) Hokes Mill Road—Route 62.

On July 14, 2009, the County Commission of Greenbrier County approved and confirmed Ordinance no.2009–01. *See, W.Va. Code,* 8–6–3 [1969], and *W.Va.Code,* 8–6–4(g) [2001] (providing for the approval and confirmation by a county commission of a municipal annexation ordinance).[2]

## II.

### Procedural Background

On July 15, 2009, the Organ Cave Group of appellants, residing along U.S. Highway 219, Morgan Hollow Road and Hokes Mill Road, near the Subdivision, filed an action in the Circuit Court of Greenbrier County, seeking

2. The record reveals controversy surrounding the development of the Stoney Glen Subdivision. On June 24, 2009, the Stoney Glen subdivision permit was revoked by the Greenbrier County Planning Commission. The City of Ronceverte and West Virginia Farm Properties contend, however, that, inasmuch as the City had already adopted the Ordinance, the Subdivision was transferred from county to municipal jurisdiction, thus making the revocation by the Greenbrier County Planning Commission irrelevant.

In relation to the revocation of the permit, however, the Division of Highways, by letter dated July 21, 2009, from the Secretary of Transportation/Commissioner of Highways, informed the Mayor of Ronceverte that the Division of Highways would no longer support the annexation of intervening roadways U.S. 219, Route 62 and Route 65. The letter states in part:

It has come to my attention that the permit application regarding the proposed Stoney

Glen subdivision, which was to be included in the annexation, has been denied by the Greenbrier Planning Commission. The denial of the subdivision permit appears also to eliminate *the justification to annex DOH right-of-way,* as the right-of-way provided a means to "reach" the subdivision from the municipal boundary. The City of Ronceverte and West Virginia Farm Properties assert, however, that the adoption of the Ordinance rendered the objection of the Division of Highways untimely. Moreover, they point out that, in a subsequent letter dated August 7, 2009, the Division requested an updated *municipal boundary map reflecting the annexation* of the territory in question. According to the City and West Virginia Farm Properties, that letter indicated that the Division of Highways had withdrawn its objection to the annexation of the intervening roadways.

injunctive relief and an order invalidating Ordinance no.2009–01. Leave was subsequently granted by the Circuit Court to join additional appellants, including the Ronceverte Group. The appellants alleged, *inter alia*, that the Ordinance is invalid because: (1) those appellants who are voters and freeholders within the annexed territory were unlawfully excluded from the "annexation without an election" process provided under *W.Va.Code*, 8–6–4 [2001], and (2) the annexation of a subdivision four miles away from the City violates the "contiguous" requirement set forth in *W.Va.Code*, 8–6–1(a) [2001].

Specifically, the appellants alleged that the City of Ronceverte violated *W.Va.Code*, 8–6–4(a) [2001], by failing to properly calculate the pool from which a majority of qualified voters, and a majority of all freeholders, of the additional territory are to be counted for purposes of annexation without an election. As the appellants alleged:

> [T]here are multiple property owners, including several of [the appellants], who own the right of way beneath and/or alongside the pavement, whose property has been annexed by Ordinance # 2009–01, who oppose the annexation petition and unlawfully were *not* included in the calculation of a "majority of the qualified voters . . . and a majority of all freeholders of the additional territory[.]"

With regard to the "contiguous" requirement, *W.Va.Code*, 8–6–1(a) [2001], states: "Unincorporated territory may be annexed to and become part of a municipality *contiguous* thereto only in accordance with the provisions of this article." (emphasis added) In that regard, the appellants alleged that "contiguous" under the statute requires a more substantial contact between a municipality and the territory annexed than the artifice of a shoestring, or ribbon, connection obtained by the annexation of public roadways.

In August 2009, the City of Ronceverte filed a motion to dismiss, alleging, *inter alia*, that the appellants lack standing to challenge the Ordinance. An evidentiary hearing on the motion was conducted, and by order entered on August 24, 2009, the Circuit Court dismissed the action. Concluding that the appellants lack standing, the order states:

> [T]he evidence submitted in this matter has failed to demonstrate any significant ownership of the property being annexed, other than a possibility of a remote reversionary right to land under a public highway by two sets of [appellants in the Organ Cave Group]. In addition, the [appellants] have failed to submit any real evidence of injury caused by the annexation. For these reasons, this Court must find that the [appellants] lack standing to proceed in this matter.

Thereafter, on October 16, 2009, the Circuit Court granted leave to join additional appellants in the action, including the Ronceverte Group. Nevertheless, the Court confirmed its previous ruling. The October 2009 order states that the appellants failed to demonstrate that they have standing to challenge Ordinance no.2009–01.

An appeal from the August 24, 2009, and October 16, 2009, orders was granted by this Court in May 2010.

## III.

### Standards of Review

As confirmed in *Wrenn v. West Virginia Department of Transportation*, 224 W.Va. 424, 427, 686 S.E.2d 75, 78 (2009), this Court "generally reviews circuit court orders granting motions to dismiss de novo." Syl. pt. 1, *Lontz v. Tharp*, 220 W.Va. 282, 647 S.E.2d 718 (2007); syl. pt. 1, *Rhododendron Furniture & Design v. Marshall*, 214 W.Va. 463, 590 S.E.2d 656 (2003). The *de novo* standard is especially relevant in this matter since the material facts surrounding the appellants' standing to challenge the Ordinance are not in dispute. Moreover, a resolution of the standing question herein may be determined, primarily, within the context of this State's municipal annexation statutes, particularly *W.Va.Code*, 8–6–4 [2001], which sets out the requirements for "annexation without an election." Thus, as this Court held in syllabus point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995): "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 4, *Harri-*

*son County Commission v. Harrison County Assessor*, 222 W.Va. 25, 658 S.E.2d 555 (2008); syl. pt. 1, *T & R Trucking v. Maynard*, 221 W.Va. 447, 655 S.E.2d 193 (2007).

## IV.

### Discussion

■ Syllabus point 5 of *Findley v. State Farm Mutual Automobile Insurance Company*, 213 W.Va. 80, 576 S.E.2d 807 (2002), holds:

Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

*See also, Snyder v. Callaghan*, 168 W.Va. 265, 275, 284 S.E.2d 241, 248 (1981) (To have standing, a party must show, *inter alia*, that the interest to be protected is "arguably within the zone of interests protected by the statute, regulation or constitutional guarantee which is the basis for the lawsuit.")

■ In the context of *Findley* and *Callaghan*, the injury to the Organ Cave Group was their exclusion, as voters and freeholders, from the annexation process set forth in *W.Va.Code*, 8–6–4(a) [2001]. That statute requires that, for an annexation to occur without an election, the petition is to be filed by a majority of the qualified voters of the addi-

tional territory and a majority of all freeholders of the additional territory.

The record before this Court demonstrates the unlawful exclusion. At the August 18, 2009, hearing before the Circuit Court, Ernest Ward Lefler, a Division of Highways right-of-way manager in the Greenbrier County area, testified that, in 1933, the State assumed jurisdiction of all county road systems in West Virginia.[3] According to Lefler, in the absence of documentation to the contrary, the holdings so acquired by the State were in the form of easements and right-of-ways, with titles to the underlying fee remaining with owners whose property abutted the roads. Following Lefler's testimony, appellant Jewell Doering testified that there are between 98 and 104 individual parcels of land along Morgan Hollow Road and Hokes Mill Road between the City of Ronceverte and the Stoney Glen Subdivision.

A review of the August 18, 2009, hearing reveals two matters of particular importance. During the hearing, and by subsequent order entered on December 14, 2009, two deeds belonging to registered voters in the Organ Cave Group were admitted in evidence. Appellants' exhibit 5 is a deed made November 16, 2005, pursuant to which Bessie Noll, *et al.*, conveyed 10 1/4 acres to appellants Jesse and Kathleen Hylton. A portion of the conveyance extends upon, or underneath, Morgan Hollow Road. Similarly, appellants' exhibit 6 is a deed made August 7, 2001, pursuant to which Charles and Angela Wilson conveyed 92.75 acres to appellants Billy and Betsy Falls. A portion of that conveyance also extends upon, or underneath, Morgan Hollow Road.[4]

3. As noted by the appellants, the administration of county road easements was transferred to the State Road Commission in 1933 by operation of *W.Va.Code*, 17–10–1 [1933], which states, in part, that "the county court [county commission] shall upon the first day of July, nineteen hundred thirty-three, relinquish to the state Road Commission [Commissioner of Highways] its authority over county-district roads, and shall thereafter neither construct, reconstruct nor maintain any road or bridge except as is specifically authorized by this article." *Stephenson v. Cavendish*, 134 W.Va. 361, 365, 59 S.E.2d 459, 462 (1950) (indicating that, since July 1, 1933, the State Road Commissioner has been required to take over county-district roads and assume their fur-

ther construction, reconstruction and maintenance.).

4. The description of the parcel conveyed to Jesse and Kathleen Hylton states in part:

all of that certain tract or parcel of real estate situate on the east side of the old road leading from Organ Cave to Ronceverte, in Irish Corner District, Greenbrier County, West Virginia, adjoining the lands of Mary J. Miller, Lee Morgan and Grover Morgan, and more particularly bounded and described as follows: Beginning at a point in the center of the road ... [.]

The description of the parcel conveyed to Billy and Betsy Falls states in part: "S 75 W 409 feet

In *Herold v. Hughes*, 141 W.Va. 182, 90 S.E.2d 451 (1955), relied on by the Circuit Court and appellees, City of Ronceverte and West Virginia Farm Properties, landowners brought an action to require a natural gas producer to remove a gas transmission pipeline from the plaintiffs' farm. The pipeline, constructed and maintained with the consent of the State, passed along an existing easement acquired by the State for use as a public roadway. Concluding that the plaintiffs were not entitled to relief, this Court held that the construction and maintenance of the pipeline did not constitute an additional burden, or servitude, on the land from which the State's easement arose. In so holding, this Court indicated, in *Herold*, that the plaintiffs' fee interest in the easement was so remote and contingent, in view of the right of the public to the roadway, that it was of too little value to be regarded as property. 141 W.Va. at 192, 90 S.E.2d at 457.

In *Herold*, however, the issue before this Court was whether the construction and maintenance of the pipeline by the gas producer constituted a "right or privilege included within the grant of an easement for public road purposes." 141 W.Va. at 187, 90 S.E.2d at 454. In that regard, the opinion in *Herold* discussed the evolving nature of the uses of public easements as communities un-

dergo modernization. Consequently, the *Herold* case is of little help in the matter now before us which solely concerns municipal jurisdiction when landowners seek to animate a specific annexation statute. *Herold* says nothing about the question of standing in statutory annexation proceedings.

■ The *Herold* opinion cites *Fox v. City of Hinton*, 84 W.Va. 239, 99 S.E. 478 (1919), relied on by the appellants. In *Fox*, this Court dissolved an injunction which compelled a power company to remove poles and transmission lines from a municipal easement. The easement was located on a portion of the plaintiff's property. The plaintiff alleged that the poles and lines interfered with his use of the property for business purposes. In dissolving the injunction, this Court concluded that the erection of the poles and wires constituted a proper use of the municipal easement. In so holding, however, this Court observed: "It may be said that in this State, upon the acquisition of a public street, the fee of the land remains in the landowner, and the public acquires an easement in the street for travel." 84 W.Va. at 242, 99 S.E. at 479–80.[5]

In *State ex rel. Butler Township Board of Trustees v. Montgomery County Board of*

---

to a point in center of Ronceverte Public road, and with center of road, N 31 W 884 feet to opposite a chestnut stump[.]"

**5.** The retention of the fee by the landowner, as stated in *Fox*, is consistent with the testimony of Lefler that, in the absence of documentation to the contrary, the holdings acquired by the State were, historically, in the form of easements and right-of-ways, with title to the underlying fee remaining with the abutting landowners. In this action, there is no evidence that the State obtained interests in fee in any of the three roadways in question between the City of Ronceverte and Stoney Glen Subdivision.

Nevertheless, the State's interest is not static, even in the case of municipal annexation. Pursuant to *W.Va.Code*, 17–2A–17 [1967], the Commissioner of Highways is authorized to acquire property, including an easement, necessary for "state road purposes." Acquisition "for present or presently foreseeable future state road purposes" is defined in *W.Va.Code*, 17–2A–17 [1967], by setting forth examples, among which is the following found in subsection (b): "Rights-of-way for state roads, including those needed for such roads within municipalities, such rights-of-

way to be as wide as deemed necessary by the commissioner[.]" The implication of those provisions is that, if necessary, the Commissioner would be authorized to take steps, in view of a new municipal subdivision, to widen a road already annexed by a city, which could impact abutting landowners such as the Organ Cave Group.

Certainly, as the City of Ronceverte and West Virginia Farm Properties point out, landowners in the Organ Cave Group retain only the same rights to the *roadways* as the public generally. However the right to use the roadways, or the surface of the State's easements, is not relevant to the appellants' fee estates in the land itself, which distinguishes the Organ Cave appellants from the general public. As this Court observed in *State ex rel. Woods v. State Road Commission*, 148 W.Va. 555, 136 S.E.2d 314 (1964): "One whose real estate abuts on a public street or highway has two distinct kinds of rights. One is a public right which he enjoys in common with all other citizens. He also has certain private rights which arise from his ownership of property contiguous to the street or highway, and which are not common to the public generally." 148 W.Va. at 558, 136 S.E.2d at 316.

*County Commissioners,* 112 Ohio St.3d 262, 858 N.E.2d 1193, 1202 (2006), the Supreme Court of Ohio concluded that landowners who own property in fee simple over which a roadway easement exists are "owners" of the roadway and therefore must be included in determining the number of owners needed to sign an expedited municipal annexation petition. In *Butler Township,* the relevant statute required that all owners within the territory to be annexed sign the petition for annexation, which proposed to annex 79.84 acres and a portion of a road. The excluded landowners were fee simple owners of adjoining land "up to the centerline of the road." 112 Ohio St.3d at 265, 858 N.E.2d at 1197. Holding that the excluded landowners should have been considered in determining the number of owners needed to sign the petition, the Supreme Court of Ohio stated:

> Even though the excluded landholders have little say over the use of the roadway itself, it cannot be questioned that they own the property underlying the roadway and will be affected if the road that runs directly in front of their property is annexed into the municipality.

> We hold that the excluded landholders must be counted as "owners" under current R.C. 709.02(E) because not to count them would deprive them of one of the property rights that they would normally have as the holders of an undeniable and definite property ownership interest.

112 Ohio St.3d at 271, 858 N.E.2d at 1202.

The "undeniable and definite" nature of an interest in property in the form of fee simple ownership is well settled and was recognized by this Court as "the highest estate known to the law" in *Meadows v. Belknap,* 199 W.Va. 243, 247 n. 7, 483 S.E.2d 826, 830 n. 7 (1997), and in *Yeager v. Town of Fairmont,* 43 W.Va. 259, 261, 27 S.E. 234, 234 (1897).

■ Consistent with those principles are the statutory provisions in this action concerning "annexation without an election." As *W.Va.Code,* 8–6–4(a) [2001], provides, in addition to a majority of qualified voters, "a majority of *all freeholders of the additional territory* " are required for the filing of the annexation petition. (emphasis added) Moreover, the term "freeholder" is defined in

*W.Va.Code,* 8–1–2(b)(14) [1969], as any person owning a "freehold interest in real property," which phrase is defined in subsection (b)(15) of *W.Va.Code,* 8–1–2 [1969], as meaning "any fee, life, mineral, coal or oil or gas interest in real property, whether legal or equitable, and whether as a joint tenant or a tenant in common, but shall not include a leasehold interest (other than a mineral, coal or oil or gas leasehold interest), a dower interest, or an interest in a right-of-way or easement[.]" The "interest in a right-of-way or easement," as to the three intervening roadways in this action, were acquired by the State a long time ago. The above statutory provisions are clear, and as this Court has often confirmed: "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548,* 144 W.Va. 137, 107 S.E.2d 353 (1959). *See also,* syl. pt. 2, *Beichler v. West Virginia University at Parkersburg,* 226 W.Va. 321, 700 S.E.2d 532 (2010); syl. pt. 3, *Skidmore v. Skidmore,* 225 W.Va. 235, 691 S.E.2d 830 (2010).

■ The deeds submitted by the Organ Cave Group are clear and demonstrate ownership of property of "freeholders of the additional territory." Those fee interests constitute a legal reality entitled to the same consideration under *W.Va.Code,* 8–6–4 [2001], as the interests of West Virginia Farm Properties and the Baylesses. Accordingly, this Court holds that, where voters and freeholders seek municipal annexation of a tract of land and a public roadway which connects the tract to the municipality, *W.Va.Code,* 8–6–4 [2001] (providing for "annexation without an election"), requires that freeholders, who own the fee in or underneath the public roadway to be annexed, are to be included in determining whether the annexation petition was filed by a "majority of the qualified voters of the additional territory" and a "majority of all freeholders of the additional territory."

Here, the record fails to suggest that the Baylesses, currently living in Japan, were

qualified voters in Greenbrier County. On the other hand, there is no dispute that those belonging to the Organ Cave Group, who own property in the additional territory as demonstrated by the deeds admitted in evidence, were qualified voters. In any event, *W.Va. Code*, 8–6–4(e) [2001], provides: "It shall be the responsibility of the governing body to enumerate and verify the total number of eligible petitioners, in each category, from the additional territory." That was not done in this matter, and the result is that the petitions for annexation and Ordinance were void *ab initio*, and the subsequent approval and confirmation of the Ordinance by the County Commission were *ultra vires*.

In view of the invalidity of the petitions for annexation and Ordinance no.2009–01, it would be inappropriate for this Court to address *W.Va.Code*, 8–6–1(a) [2001], which provides that new territory may be annexed to, and become part of, a municipality "contiguous thereto." As stated above, the appellants assert that "contiguous" suggests a more substantial contact between a city and territory to be annexed than the artifice of a shoestring, or ribbon, connection obtained by the annexation of public roadways. On the other hand, the City of Ronceverte and West Virginia Farm Properties assert that the contiguous requirement is met by proximity, rather than a standard of strictly abutting or touching.[6]

■ The August 24, 2009, and October 16, 2009, orders dismissing the appellants' action were limited to the question of standing, and, as a result, the issues surrounding the contiguous requirement and its application to the Stoney Glen Subdivision were left unresolved. Syllabus point 2 of *Sands v. Security Trust Company*, 143 W.Va. 522, 102 S.E.2d 733 (1958), holds: "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 2, *In re: Robinette*, 218 W.Va. 186, 624 S.E.2d 533 (2005); syl. pt. 4, *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995). For that reason, and because this action is before this Court upon a dismissal accompanied by a limited record, it would be inappropriate for this Court to preemptively and definitively settle the "contiguous requirement" in these circumstances, especially in view of the revocation of the Subdivision's permit by the Greenbrier County Planning Commission and resulting correspondence from the West Virginia Division of Highways. *See*, n. 2, *supra*. In short, since the Circuit Court limited its ruling to standing, this Court should do the same.[7]

---

**6.** It should be noted that "contiguous" is not defined in the context of *W.Va.Code*, 8–6–4 [2001], concerning annexation without an election. That is not the case, however, under *W.Va. Code*, 8–6–5 [2001], which provides for "annexation by minor boundary adjustment." As stated in *W.Va.Code*, 8–6–5(f)(1) [2001]:

For purposes of this section, "contiguous" means that at the time the application for annexation is submitted, the territory proposed for annexation either abuts directly on the municipal boundary or is separated from the municipal boundary by an unincorporated street or highway, or street or highway right-of-way, a creek or river, or the right-of-way of a railroad or other public service corporation, or lands owned by the state or the federal government.

*See, In re Petition of the City of Beckley, supra*, 194 W.Va. at 429, 460 S.E.2d at 675 (an "annexation by minor boundary adjustment" case recognizing authority to the effect that "contiguous" does not always mean that the land must be touching).

In any event, the "contiguous" component of *W.Va.Code*, 8–6–1(a) [2001], may not be susceptible to resolution under an inflexible rule. Unlike some States, the topography in West Virginia, with its mountains, "narrow valleys and complex water sheds" is a factor reasonably to be taken into account by a governing body considering annexation. *Butler v. Price*, 212 W.Va. 450, 455, 574 S.E.2d 782, 787 (2002) (concurring opinion). *See, Cowan v. County Commission of Logan County*, 161 W.Va. 106, 112 n. 4, 240 S.E.2d 675, 679 n. 4 (1977) ("Long, narrow, ribbon-like communities are characteristic features of human settlements in the valleys of the central Appalachian plateau of North America."). *See also*, Erwin S. Barbre, Annotation, *What Land is Contiguous or Adjacent to Municipality so as to be Subject to Annexation*, 49 A.L.R.3d 589 (1973) (indicating that, in the absence of a statutory definition, it is generally agreed that the annexed territory must touch or be in "substantial physical contact" with the municipality, although many courts have recognized that the terms "contiguous" and "adjacent" are flexible and vary from case to case.).

**7.** *See, Butler Township, supra*, 112 Ohio St.3d at 270, 858 N.E.2d at 1201 (suggesting that the statutory contiguity requirement for annexation in that case was a separate matter from the definition of property "owners").

## V.

## Conclusion

For the reasons stated above, the appellants had standing to file this action because certain appellants in the Organ Cave Group are voters and freeholders of the annexed territory but were unlawfully excluded from the annexation process in violation of the controlling statute, *W.Va.Code*, 8–6–4 [2001]. As a result of the exclusion, fatal to the Ordinance under the facts herein, the petitions for annexation and Ordinance were void *ab initio*, and the subsequent approval and confirmation of the Ordinance by the County Commission were *ultra vires*.[8]  Accordingly, the August 24, 2009, and October 16, 2009, orders of the Circuit Court of Greenbrier County are reversed.

Reversed

---

**8.** Because we have concluded that the municipal ordinance was void *ab initio*, we do not need to determine whether the Ronceverte Group had standing.