IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September Term 2013

_____

No. 12-1254
_____

FILED

November 13, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOHANNA DORSEY,
Plaintiff Below, Petitioner

v.

PROGRESSIVE CLASSIC INSURANCE COMPANY,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
The Honorable Ronald E. Wilson, Judge
Civil Action No. 11-C-95

REVERSED AND REMANDED

_____

Submitted October 15, 2013
Filed: November 13 , 2013

David A. Jividen, Esq.
Chad C. Groome, Esq.
Jividen Law Offices, P.L.L.C.
Wheeling, West Virginia
Counsel for the Petitioner

E. Kay Fuller, Esq.
Martin & Seibert, L.C.
Martinsburg, West Virginia
Counsel for the Respondent

Jill Cranston Rice, Esq.
Mychal Sommer Schulz, Esq.
Jacob A. Manning, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Counsel for *amicus curiae*
West Virginia Insurance Federation

JUSTICE KETCHUM delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN dissents and reserves the right to file a dissenting Opinion.

**SYLLABUS BY THE COURT**

Where a West Virginia motor vehicle insurance policy includes within the definition of an insured person "any other person while occupying a covered vehicle," a guest passenger is a first-party insured under the medical payments section of the policy.

**Ketchum, Justice**:

Johanna Dorsey ("Dorsey") appeals the August 29, 2012, order of the Circuit Court of Ohio County which dismissed her action against Progressive Classic Insurance Company ("Progressive"). Dorsey, a guest passenger in a vehicle insured by Progressive, received medical payments coverage under the Progressive policy. Those payments were for some of the medical expenses she incurred for the treatment of her injuries caused when the vehicle was rear-ended by a truck.

Dorsey later prevailed in a lawsuit against the truck owner and driver for her injuries and medical expenses. Included in the damages she recovered were the medical bills Progressive paid under the medical payments coverage. Progressive asserted a subrogation lien on the recovery for the amount it paid under the medical payments coverage section of the policy.

Dorsey contends that Progressive improperly refused to reduce its subrogation lien, for the medical payments it made on her behalf, by Progressive's *pro rata* share of the attorney fees and costs Dorsey incurred in the litigation against the truck owner and driver. Dorsey filed a lawsuit against Progressive alleging that the refusal to reduce the lien constituted first-party common law bad faith and a violation of the *West Virginia Unfair Trade Practices Act*. However, noting that Dorsey was not the "named insured" but only an "insured" under the Progressive policy and paid no premiums for the policy, the circuit court dismissed the action. The circuit court concluded that Dorsey was a third-party insured under

1

the Progressive policy and that she must be a first-party insured to pursue her first-party common law and statutory bad faith claims against Progressive.

This Court is of the opinion that the circuit court committed reversible error in dismissing the lawsuit. A review of Progressive's insurance policy, the undisputed facts, and the relevant legal authorities demonstrate that Dorsey's status under the Progressive policy was that of a first-party insured, with standing to pursue her first-party common law and statutory bad faith claims against Progressive. Accordingly, the August 29, 2012, order of the Circuit Court of Ohio County is reversed, and this action is remanded to that court for proceedings consistent with this opinion.[1]

## I. Background

On September 18, 2007, a 1996 Subaru driven by Joshua A. Teacoach was rear-ended by a truck owned by Comcast Corporation and driven by James Renforth. Dorsey, a guest passenger in the Teacoach vehicle, sustained bodily injuries in the accident and incurred medical expenses. The Teacoach vehicle was insured under a West Virginia motor vehicle policy of insurance issued by Progressive. Dorsey filed a medical payments claim with Progressive under the policy, and Progressive paid the medical payments policy limit in the amount of $5,000 on her behalf.

---

[1] In addition to the briefs and the record-appendix of the parties, this Court has received and considered the *amicus curiae* brief of the West Virginia Insurance Federation.

2

Dorsey filed a personal injury action against Comcast and Renforth (the "tortfeasors"). Meanwhile, Progressive sent the tortfeasors's insurer, Liberty Mutual Insurance Company, written notice of Progressive's subrogation lien for the $5,000 in medical payments.[2] In November 2010, Dorsey settled her personal injury action for $60,000. Soon after, a dispute arose between Dorsey and Progressive concerning the medical payment subrogation lien. Dorsey asserted that Progressive was required to reduce its lien by its *pro rata* share of the attorney fees and costs she incurred in the lawsuit against the tortfeasors. According to Dorsey, Progressive refused to do so which delayed the closure of the settlement.[3] However, Progressive asserted that no reduction was warranted.

---

[2] In a January 10, 2008, letter to Liberty Mutual entitled Updated Med-Pay Lien, Progressive confirmed that it had previously sent formal notice of its subrogation rights. Moreover, the letter stated that it had a $5,000 medical payments lien.

Syllabus points 3 and 4 of *Nationwide Mutual Insurance Company v. Dairyland Insurance Company*, 191 W.Va. 243, 445 S.E.2d 184 (1994), state:

> 3. The subrogation rights of an insurance carrier are not barred so long as the tortfeasor's insurance carrier was notified of the subrogation claim before it settled with the insured who received the medical payments.

> 4. Ordinarily the tortfeasor's insurance carrier is primarily responsible for payment of the subrogation claim. It is responsible because it was aware of the claim before it obtained the insured's release.

*Accord Provident Life and Accident Insurance Company v. Bennett*, 199 W.Va. 236, 241, 483 S.E.2d 819, 824 (1997).

[3] Syllabus point 3 of *Federal Kemper Insurance Company v. Arnold*, 183 W.Va. 31, 393 S.E.2d 669 (1990), makes clear:

> When an automobile insurer is reimbursed, under a subrogation clause in the insurance contract, for benefits paid to a covered person that such person has then successfully

(continued...)

3

## II. Dorsey's Claims Against Progressive

On March 25, 2011, Dorsey filed the current lawsuit in the Circuit Court of Ohio County against Progressive. Seeking compensatory and punitive damages, Dorsey alleged that Progressive's refusal to reduce its $5,000 subrogation lien by its *pro rata* share of the attorney fees and costs that Dorsey incurred in the personal injury lawsuit constituted common law bad faith and a violation of the *West Virginia Unfair Trade Practices Act* ("UTPA"). *W.Va. Code*, 33-11-1 [1974], *et seq.* The stated purpose of the Act is to regulate trade practices in the insurance business in this State.

In June 2011, Progressive filed a motion to dismiss or, in the alternative, a motion for summary judgment.[4] Progressive alleged that, as a guest passenger, Dorsey's medical payments claim was covered under the Teacoach policy merely by virtue of her

---

[3](...continued)
> recovered from a third party, the reimbursement should be reduced by the insurer's *pro rata* share of the cost to the covered person of obtaining the recovery against the third party.

*Accord Anderson v. Wood*, 204 W.Va. 558, 564, 514 S.E.2d 408, 414 (1999).

[4] Progressive also filed a third-party complaint against Liberty Mutual Insurance Company. The third-party complaint alleged that, despite receiving multiple notices of Progressive's subrogation lien prior to the settlement of Dorsey's personal injury action, Liberty Mutual disbursed the entire amount of the settlement proceeds to Dorsey, thereby failing to honor Progressive's lien.

In its response, Liberty Mutual asserted that it informed Dorsey that it would (a) withhold the $5,000 owed to Progressive from Dorsey's settlement check or (b) include Progressive as a payee on the check. However, Dorsey objected to those options and filed a motion to enforce the settlement. The motion was granted, and Liberty Mutual was ordered to issue a check to Dorsey for the full settlement amount. According to Liberty Mutual, Dorsey, thus, assumed the obligation for Progressive's subrogation lien and agreed to hold Liberty Mutual harmless.

presence in the vehicle and that her coverage was not coextensive with Joshua A. Teacoach, the named insured on the policy. Therefore, as a non-premium paying, extra-contractual insured under the policy, Dorsey was a third-party insured, without standing to pursue her common law and statutory bad faith claims against Progressive.

The circuit court denied the motion on September 12, 2011. Soon after, however, Progressive filed a motion to reconsider based on this Court's September 22, 2011, opinion in *Loudin v. National Liability & Fire Insurance Company*, 228 W.Va. 34, 716 S.E.2d 696 (2011). Syllabus point 2 of *Loudin* holds: "A first-party bad faith action is one wherein the insured sues his / her own insurer for failing to use good faith in settling a claim filed by the insured." On that basis, Progressive again alleged that Dorsey was a third-party insured without standing to pursue her bad faith claims arising under the medical payments provision of Teacoach's policy with Progressive.

Following a hearing, the circuit court entered the August 29, 2012, order granting Progressive's motion to reconsider and dismissing the action. The circuit court emphasized that Dorsey was not a named insured under the Progressive policy and paid no premiums for the policy. Consequently, the circuit court determined that, under *Loudin*, Dorsey was a third-party insured and was, therefore, precluded from pursuing her common law and statutory bad faith claims against Progressive. Dorsey's appeal to this Court followed.

5

### III. Standard of Review

Progressive initially filed a motion to dismiss or, in the alternative, a motion for summary judgment. Following the interlocutory denial of the motion, Progressive, citing *Loudin*, sought a reconsideration of the ruling. Based on *Loudin*, the circuit court reversed its ruling and dismissed Dorsey's lawsuit pursuant to the August 29, 2012, order. The dismissal raises a question of law concerning Dorsey's standing to pursue first-party common law and statutory bad faith claims against Progressive.

Syllabus point 1 of *Chrystal R. M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), holds: "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 4, *Harrison County Commission v. Harrison County Assessor*, 222 W.Va. 25, 658 S.E.2d 555 (2008). *See also Wrenn v. West Virginia Department of Transportation*, 224 W.Va. 424, 427, 686 S.E.2d 75, 78 (2009) (This Court "generally reviews circuit court orders granting motions to dismiss *de novo*."). *Accord Doering v. City of Ronceverte*, 228 W.Va. 147, 151, 718 S.E.2d 497, 501 (2011). With that standard in mind, we proceed to address the merits of Dorsey's appeal.

### IV. Discussion

This case turns on whether Dorsey's claim was a first-party claim under the Progressive policy, or a third-party claim. This is because in *Elmore v. State Farm Mutual*

6

*Automobile Insurance Company*, 202 W.Va. 430, 504 S.E.2d 893 (1998), this Court held in the syllabus that a third-party insured has no cause of action against an insurance carrier "for *common law* breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." (Emphasis added). Moreover, in 2005, the West Virginia Legislature prohibited *statutory* third-party bad faith causes of action against insurers. *W.Va. Code*, 33-11-4a(a) [2005], of the UTPA provides:

> A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the commissioner in accordance with subsection (b) of this section. A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured.

Dorsey's action against Progressive, alleging first-party common law bad faith and a violation of the UTPA, arose out of the section of Progressive's policy entitled "Part II - Medical Payments Coverage." That section provided in relevant part:

> Subject to the Limits of Liability, if you pay the premium for Medical Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:
>
> 1. sustained by an insured person;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of a motor vehicle or trailer.
> . . . .

7

When used in this Part II:

> 1. "Insured person" and "insured persons" mean:
>     a. you while occupying any vehicle, other than a vehicle owned by you which is not a covered vehicle; [and]   .  .  .
>     d. *any other person while occupying a covered vehicle*[.]

(Emphasis added).[5]

Notwithstanding those definitions of an "insured person" in the Medical Payments Coverage section of the policy, the circuit court, relying on *Loudin*, determined that Dorsey was a third-party insured. As stated, syllabus point 2 of *Loudin* holds: "A first-party bad faith action is one wherein the insured sues his / her own insurer for failing to use good faith in settling a claim filed by the insured." *See also State ex rel. Allstate Insurance Company v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998). Relying solely on *Loudin*, the circuit court precluded Dorsey from pursuing her common law and statutory bad faith claims against Progressive.

The facts in *Loudin*, however, are very different from the circumstances in the current matter. In *Loudin*, the policyholder, Thomas Loudin, was injured when his truck was accidently backed over him while being driven by a person to whom Loudin had given permission to drive the truck. The truck was insured by National Liability & Fire Insurance

---

[5] In addition, the Progressive policy included a section entitled "General Definitions." In that section, "covered vehicle" was defined as "any vehicle shown on the Declarations Page." Moreover, the word "occupying" was defined as "in, on, entering, or exiting." It is undisputed that Dorsey was in the covered vehicle, a 1996 Subaru, at the time of the accident.

8

Company ("National"). Loudin filed a claim under the liability coverage provision of the policy based on the negligence of the truck driver who was insured as a "permissive user" under Loudin's policy. National refused to pay Loudin's negligence claim against the permissive user. Loudin then filed a negligence action in circuit court against the permissive user, with counts against National alleging first-party common law bad faith and violations of the UTPA because National improperly handled his claims against the permissive user under the liability coverage of his policy. The action against the permissive user finally settled, and National, asserting that Loudin was a third-party insured on his claim against the driver, moved for summary judgment on the claims of common law bad faith and UTPA violations. The circuit court agreed that Loudin was a third-party insured and entered summary judgment in favor of National.

The issue before this Court in *Loudin* was whether the named policyholder, Thomas Loudin, was a first-party insured entitled under West Virginia law to bring a cause of action against National for common law bad faith and violations of the UTPA for the improper handling of his negligence claim against the permissive driver, or whether Loudin was a third-party insured without standing to bring the action. To resolve the issue, this Court, in *Loudin*, considered, *inter alia*, the Insurance Commissioner's definitions of first-party and third-party claimant found in the *West Virginia Code of State Rules* pertaining to "Unfair Trade Practices." Those Rules contain the following definitions:

> *W.Va. C.S.R.* § 114-14-2.3. (2006) - "First-party claimant" or "Insured" means an individual, corporation,

9

association, partnership or other legal entity asserting a right to payment *under an insurance policy* or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract.

*W.Va. C.S.R.* § 114-14-2.8. (2006) - "Third-party claimant" means any individual, corporation, association, partnership or other legal entity asserting a claim *against any individual*, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of an insurer.

(Emphasis added).[6]  *See also W.Va. Code*, 33-11-4a(j)(1) [2005] (providing a similar definition of "third-party claimant" in the UTPA).

In *Loudin*, we found that the Commissioner's definitions were unambiguous and consistent with this Court's case law.  Nevertheless, under the unique facts in the case, this Court observed that Thomas Loudin had, on the one hand, the characteristics of a first-party claimant *as the insured policyholder* and, on the other hand, the characteristics of a third-party claimant since National asserted that the permissive user was a "non-named insured or beneficiary under the policy" when the accident occurred.  228 W.Va. at 39, 716 S.E.2d at 701.  However, emphasizing that Thomas Loudin was the named insured on the National policy, had purchased the policy, and was entitled to expect the benefits thereof, this Court concluded that the circuit court's classification of Loudin as a third-party insured was

---

[6] Title 114, Series 76, of the *West Virginia Code of State Rules* is entitled "Rules of Practice and Procedure for Administrative Proceedings Brought by Third Party Claimants." The Rules set forth therein govern proceedings before the Insurance Commissioner upon the filing of an administrative complaint by a third-party claimant alleging an unfair claims settlement practice.

error. Indicating that the rejection of Thomas Loudin as a first-party insured would have effectively terminated his right to seek legal redress against his insurer for the alleged improper handling of his negligence claim against the permissive user, 228 W.Va. at 41, 716 S.E.2d at 703, we held in syllabus point 3 of *Loudin*:

> When a named policyholder files a claim with his/her insurer, alleging that a nonnamed insured under the same policy caused him/her injury, the policyholder is a first-party claimant in any subsequent bad faith action against the insurer arising from the handling of the policyholder's claim.

In the instant case, Dorsey was not the named insured on the Progressive policy. Dorsey, as a guest passenger in the covered vehicle, was included as an "insured person" under the Medical Payments Coverage section of the policy Progressive issued to the named insured, Joshua A. Teacoach. Thus, Dorsey, who never asserted any claims against the named insured and only asserted a claim under the policy, has the characteristics of a first-party insured. Dorsey's brief filed in this Court accurately states:

> Ms. Dorsey's claims regarded first-party medical payments claims and were clearly not claims presented against an "insured tortfeasor" or their insurer. Her claims were against the Progressive policy that provided coverage to the vehicle within which she was a passenger. She never asserted a claim against policy-holder, Joshua Teacoach, or otherwise alleged that he was a tortfeasor.

Nothing in *Loudin* excluded insureds, such as Dorsey, from first-party status. To the contrary, the conclusion that Dorsey is a first-party insured is supported by the definitions found in the *West Virginia Code of State Rules* cited in the *Loudin* opinion.

11

Under *W.Va. C.S.R.* § 114-14-2.3. (2006), a first-party claimant or insured includes an individual "asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract." By contrast, *W.Va. C.S.R.* § 114-14-2.8. (2006), includes as a third-party claimant an individual "asserting a claim *against* any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of an insurer." (Emphasis added).

Upon all of the above, this Court holds that where a West Virginia motor vehicle insurance policy includes within the definition of an insured person "any other person while occupying a covered vehicle," a guest passenger is a first-party insured under the medical payments section of the policy.

## V. Conclusion

This Court concludes that Dorsey is a first-party insured under the Progressive policy who may pursue an action against Progressive for common law bad faith and violations of the UTPA. Accordingly, the August 29, 2012, order of the Circuit Court of Ohio County is reversed, and this action is remanded to that court for proceedings consistent with this opinion.

**Reversed and Remanded**

12