**Levert SMITH and Nelson D. Radford, Co-administrators of the Estate of Joseph Jeremaine Porter, Plaintiffs,**

**v.**

**SCOTTSDALE INSURANCE COMPANY, Defendant.**

**Civil Action No. 5:12–cv–86.**

United States District Court, N.D. West Virginia.

Signed May 16, 2014.

ary 24, 2014.[1] Defendant filed a response to the motion on February 6, 2014,[2] and Plaintiffs filed a reply on February 13, 2014.[3] This Court held an evidentiary hearing and argument on Defendants' Motion on March 14, 2014. Present at the hearing were Barbara J. Keefer, Esq., counsel for Defendant, and Timothy F. Cogan, Esq., counsel for Plaintiffs. No testimony or evidence was presented. At the conclusion of the hearing, the Court granted Defendant's motion for leave to file a surreply and directed Plaintiffs to file any responsive memorandum to Defendant's surreply. The Court also directed Defendant to file the withheld documents with the Court for *in camera* review. Defendant filed its surreply on March 17, 2014,[4] and Plaintiffs filed a response on March 21, 2014.[5] On March 28, 2014, the undersigned received the withheld documents. The Court has reviewed the documents in consideration of the motion.

## I. INTRODUCTION

### A. Background

Plaintiffs are the co-administrators of the Estate of Joseph Porter, who was fatally shot on November 8, 2009, by Huntington police officer Ronnie Lusk. Defendant, Scottsdale Insurance Company, was the City of Huntington's insurer at the time of the shooting. This case arises from the settlement negotiations between Defendant and Plaintiffs in an underlying lawsuit against the City of Huntington and

Patrick S. Cassidy, Timothy F. Cogan, Cassidy, Myers, Cogan & Voegelin, Wheeling, WV, for Plaintiffs.

Barbara J. Keefer, Gary Alan Matthews, Jenkins Fenstermaker, PLLC, Huntington, WV, for Defendant.

### *ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL*

JAMES E. SEIBERT, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs' Motion to Compel filed on Janu-

---

1. Dkt. No. 70

2. Dkt. No. 73.

3. Dkt. No. 77.

4. Dkt. No. 83.

5. Dkt. No. 88.

Lusk.[6] During the course of the underlying litigation, the parties attempted mediation and, subsequently, settlement negotiations, but all were unsuccessful. Eventually, all claims in that case were resolved in the defendants' favor, either through summary judgment, judgment as a matter of law, or by jury verdict returned on May 25, 2012.

Two weeks prior to the trial date in the underlying case, Plaintiffs filed the instant suit in the Circuit Court of Ohio County, West Virginia, on May 10, 2012. In the complaint, Plaintiffs allege that Defendant violated the West Virginia Human Rights Act by discriminating against Plaintiffs during settlement negotiations based upon their race. Defendant removed the case to this Court on June 13, 2012. On August 31, 2012, Plaintiffs appealed the jury verdict in the underlying case to the United States Court of Appeals for the Fourth Circuit. On October 4, 2012, the Court stayed these proceedings pending the exhaustion of Plaintiffs' appeals in the underlying action.[7] On November 18, 2013, the Court lifted the stay at Plaintiffs' request and ordered discovery to resume.[8] The parties engaged in discovery and a dispute arose.

### B. The Motion

Plaintiffs' Motion to Compel.

### C. Decision

Plaintiffs' Motion is granted in part because some of the withheld documents are not privileged, nor are they immune from discovery under the work product doctrine. However, the majority of the documents are privileged communications or protected work product and need not be disclosed by Defendant.

## II. PLAINTIFFS' MOTION TO COMPEL

### A. Contentions of the Parties

Plaintiffs contend that they are entitled to all of the documents withheld by Defendant from the underlying claim file on the basis of attorney-client privilege and work-product protection. Plaintiffs do not address whether the withheld documents actually qualify for protection under either the attorney-client privilege or the work-product doctrine. Instead, Plaintiffs raise several grounds for finding the privilege wholly inapplicable. First, Plaintiffs contend that Defendant procedurally waived its discovery objections by not specifically addressing each withheld document in its response brief. Substantively, Plaintiffs contend that they are analogous to first-party bad-faith claimants, and that as such, no attorney-client privilege or work-product protection attaches to the underlying claim file. Plaintiffs also argue that even if they are considered more like third-party claimants, all documents generated prior to the filing of this claim, on May 10, 2012, are discoverable pursuant to the decision of the West Virginia Supreme Court of Appeals in *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 370 n. 17, 508 S.E.2d 75, 86–87 (1998). Next, Plaintiffs contend that even if the Court finds that the documents qualify for work-product protection or the attorney-client privilege, they have a substantial need for the documents due to the unique nature of a *Michael* action. Finally, Plaintiffs argue that the nature of their allegations results in an implied waiver of both the attorney-client privilege and the work-product pro-

---

6. That case was Civil Action No. 3:10–cv–781. The claims in action were for a deprivation of constitutional rights under 42 U.S.C. § 1983, negligence, and wrongful death.

7. Dkt. No. 49.

8. Dkt. No. 50.

tection. Defendant, on the other hand, contends that the documents were properly withheld under either the attorney-client privilege or the work-product doctrine.

## B. Discussion

### 1. *Waiver of Discovery Objections*

■ In responding to Plaintiffs' request for documents, Defendant withheld 595 documents from the underlying defendants' claim file and provided a very detailed privilege log. Plaintiffs nonetheless argue that Defendant waived its objections because it did not address each and every document in its response to Plaintiffs' motion to compel. Plaintiffs are correct that failure to make specific objections *to discovery requests* may result in a waiver of those objections and that a party cannot carry this burden with general allegations or blanket assertions that the privilege should apply. *Shaffer v. Northwestern Mut. Life Ins. Co.*, 2006 WL 2432110 at *2 (N.D.W.Va. Aug. 21, 2006). However, here, Defendant complied with the requirements of both the Federal and Local Rules of Civil Procedure by providing a detailed privilege log. This is not a case where a party made generic assertions of privilege such that waiver of those objections is appropriate, and the Court will address the merits of the parties' positions.

### 2. *Broad Discovery in Discrimination Cases*

■ Plaintiffs also argue that because this is a "straight discrimination action," they are entitled to enjoy broad discovery. It is true, as Plaintiffs assert, that courts often allow broader discovery in discrimination cases than normally allowed in other civil litigation and that " 'the imposition of unnecessary limitations on discovery is especially to be avoided in Title VII cases,' because of the nature of the proofs required to demonstrate unlawful discrimination may often be indirect or circumstantial." *Miles v. Boeing Co.*, 154 F.R.D. 117, 119 (E.D.Pa.1994) (quoting *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J.1985)). However, this principle concerns the scope of allowable discovery, *i.e.* what is considered relevant and therefore discoverable, and not, as Plaintiffs suggest, the applicability of the attorney-client privilege or work-product doctrine. Plaintiffs do not cite to any authority for the proposition that the standards for applying the attorney-client privilege or work-product doctrine are relaxed in a discrimination case. The case upon which they rely for this theory, *State ex. rel. Westbrook Health Services, Inc. v. Hill,* 209 W.Va. 668, 550 S.E.2d 646 (2001), did not hold that the attorney-client privilege was inapplicable simply because the case involved a discrimination claim; rather, the *Westbrook* Court found that the defendant had not established that the elements of the attorney-client privilege were met. Accordingly, the Court will apply the standard tests for determining whether the withheld documents in this case are protected, and therefore non-discoverable, and declines to establish a novel exception to those rules because this is a discrimination case.

### 3. *First–Party vs. Third–Party Insurance Claims*

■ Plaintiffs next urge the Court to apply the privilege rules applicable to first-party, rather than third-party, bad faith actions to this *Michael* action. "For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff

who prevailed in a separate action against an insured tortfeasor. In the bad faith action against the insurance company the third-party alleges the insurer insurance company engaged in bad faith settlement in the first action against the insured tortfeasor." *Gaughan,* 203 W.Va. at 369–70, 508 S.E.2d 75. While a first-party claimant has a cause of action for bad faith settlement practices under both the common law and the WVUTPA, the West Virginia Supreme Court of Appeals has long held that "[a] third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893 (1998). Additionally, in 2005, the Legislature amended the WVUTPA to expressly prohibit statutory third-party bad faith causes of action against insurers. W. Va.Code § 33–11–4a(a) (2005) (Repl. Vol. 2006). However, the *Michael* Court held that "the prohibition of a third-party law suit against an insurer under [the WVUTPA] does not preclude a third-party cause of action against an insurer under [the WVHRA]." *Michael,* 226 W.Va. at 403, 701 S.E.2d 116.

Plaintiffs argue that because only first-party bad faith actions were recognized by the West Virginia Supreme Court of Appeals prior to the *Michael* Court's holding, *Michael* afforded first-party status to litigants, such as Plaintiffs, who bring claims against an insurance company for discriminatory settlement practices in violation of the West Virginia Human Rights Act. Plaintiffs' argument misapprehends the court's holding in *Michael.* The Court in *Michael* held that a third-party claim against an insurer brought under the WVHRA does not implicate the prohibition against third-party claims *even though* it is a third-party claim, not *because* it is a first-party claim.

▉ Plaintiffs also liken their case to a first-party action, where a common law duty of good faith and fair dealing runs directly from an insurer to its insured, because in a *Michael* action, the statutory duty not to discriminate runs directly from the insurer to a discriminatee. However, Plaintiffs' argument proves too much. A party's status as a first-party or third-party claimant is determined by the contractual relationship between that party and the insurer in the underlying litigation, not whether a duty is owed to that party by the insurance company in the underlying litigation. *See Loudin v. National Liability & Fire Ins. Co.,* 228 W.Va. 34, 716 S.E.2d 696 (2011) (" 'First-party' claimant or 'Insured' means an individual asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract.... 'Third-party claimant' means any individual asserting a claim against any individual insured under an insurance policy or insurance contract of an insurer.") (internal citations omitted); *Erie Ins. Prop. & Cas. Co. v. Johnson,* 2011 WL 3607950 (S.D.W.Va. Aug. 15, 2011) ("The relevant inquiry for a common law bad faith claim is thus solely into the underlying contractual relationship between the parties.").

▉ Plaintiffs fail to recognize that an insurer still owes third-party claimants a *direct* statutory duty not to engage in unfair claim settlement practices under the WVUTPA, notwithstanding the abolition of third-party lawsuits, because the Legislature simultaneously established an administrative process for third-party claimants to pursue administrative penalties against insurers for third-party unfair claim settlement practices. *See* W.Va.Code § 33–11–4a(b)–(j). Unfair claim settlement prac-

tices by insurers are still illegal; it was simply the forum for relief that was changed. Moreover, an insurer's statutory duty not to engage in unfair settlement practices under the WVUTPA also runs directly to third-parties to an insurance contract, but this fact does not convert those parties into first-party claimants. *See Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 601–02, 280 S.E.2d 252 (1981) (noting that W.Va.Code, 33–11–4(9) creates a statutory duty not to engage in unfair claim settlement practices that is "independent of any insurance contract and a cause of action may be maintained based on the violation of the statutory duty"). Thus, the fact that a duty runs directly from the insurance company to the plaintiffs in the underlying litigation does not magically convert a subsequent lawsuit into a first-party bad-faith action in the absence of a contractual relationship between the insurance company and the plaintiffs.

Additionally, Plaintiffs cite two post-*Michael* cases, *Loudin v. National Liability & Fire Ins. Co.,* 228 W.Va. 34, 716 S.E.2d 696 (2011) and *Dorsey v. Progressive Classic Ins. Co.,* 232 W.Va. 595, 753 S.E.2d 93 (2013), for the proposition that the West Virginia Supreme Court of Appeals would now hold that *Michael* cases are first-party actions. However, nothing in *Loudin* or *Dorsey* supports this argument. *Loudin* dealt with the issue of a bad faith claim having characteristics of both a first-party claim and a third-party claim. The Court concluded that where a plaintiff purchased the insurance policy and was the named insured under the policy, a subsequent bad faith action was a first-party claim because to hold otherwise would be to treat the plaintiff as "a nonpremium paying claimant seeking coverage under a third-party's policy, when he, in fact, paid the premiums for the policy in question." *Loudin*, at 703. The Court emphasized

that: "A third party claimant has no contract with the insurer ..., has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers ... with regard to their insureds." Similarly, in *Dorsey,* the Court held that a guest passenger in a covered vehicle, *who is covered as an insured person under the insurance policy,* and who never asserted any claims against the named insured, but who only asserted a claim under the policy, is a first-party claimant. The Court in both cases concluded that the plaintiffs were first-party claimants because they asserted a contractual right to payment under an insurance policy.

Here, in contrast, Plaintiffs have no characteristics of first-party claimants. They never had an insurance policy with Defendant. They never asserted a right to payment under an insurance policy. Plaintiffs were not the insured in the underlying action and they never directly contracted with Defendant to provide insurance coverage. They were at all times third-party claimants with respect to Defendant. *See Erie Ins. Prop. & Cas. Co. v. Johnson,* 2011 WL 3607950 (S.D.W.Va. Aug. 15, 2011) ("In the present case, there was no contractual relationship between Erie and the Buckleys. Even if the Buckleys could recover directly from Erie under the first aid provision, this would not create the requisite contractual relationship between Erie and the Buckleys. Accordingly, the Buckleys cannot maintain a common law bad faith action against Erie."). In fact, the cases cited by Plaintiffs unequivocally define a first-party action as one in which the insured sues his own insurer for failing to use good faith in settling a claim *filed by the insured* and a

third-party action as one in which a plaintiff in the underlying action against the insured sues the insured's insurer. Compare *Marshall v. Saseen*, 192 W.Va. 94, 100, 450 S.E.2d 791, 797 (1994) ("First party insurance means that the insurance carrier has directly contracted with the insured to provide coverage and to reimburse the insured for his or her damages up to the policy limits."), with *Shannon R. Ginn Constr. Co. v. Reliance Ins. Co.*, 51 F.Supp.2d 1347, 1351 n. 6 (S.D.Fla.1999) ("A third-party action is a claim by a non-insured against the insurer of another, often a tortfeasor."). Accordingly, the Court finds that Plaintiffs stand in relation to Defendant as third-party claimants in this *Michael* action.[9]

## 4. Attorney-client Privilege and Work Product Doctrine

 Having rejected Plaintiffs' reasons for disregarding Defendant's claims of privilege, the court will apply established principles of attorney-client privilege and work product doctrine to the discovery at hand. When the Court's jurisdiction is based upon diversity of the parties it applies state law regarding the attorney client privilege and federal common law to claims of work-product protection. *See* Fed.R.Evid. 501; *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 329 n. 2 (N.D.W.V.2006). "The party asserting either attorney client privilege or

the work product doctrine bears the burden of establishing its applicability." *Miller v. Pruneda*, 2004 WL 3951292 at *2 (N.D.W.Va. Nov. 5, 2004); *State ex rel. U.S. Fid. and Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677, 688 (W.Va. 1995).

### a. Attorney–Client Privilege

 Under West Virginia law, "[i]n order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential." *Canady*, 194 W.Va. at 442, 460 S.E.2d 677. (citing *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (W.Va.1979)). Importantly, the attorney-client privilege protects the substance of the communications, and, therefore, "it extends beyond the attorney to others who, at the attorney's direction, are aware of confidential information." *Id.* (citing *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir.1984)). Accordingly, privileged communications between an insured and the insured's attorney remain privileged even if they are repeated to the insurer. *See State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W.Va.

9. The Court also notes that even if this was a first-party action, the claim file would likely be undiscoverable to Plaintiffs. Plaintiffs incorrectly assert that the attorney-client privilege and work-product doctrine never apply in a first-party bad faith claim. However, most courts hold that where the insured and the insurer are adversaries from the beginning of the underlying claim, such as where the insured asserts a loss claim directly, the insurer can still assert attorney-client privilege and work-product protection over documents in the insured's claim file. *See State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 634,

584 S.E.2d 480 (2003) (Davis, J, concurring) (collecting cases). It is only when the insured and the insurer start out with a common interest, such that the claim file was generated for the insured's benefit, that courts generally hold that an insured has access to all of the documents in his file "because the insurer created the file primarily on behalf of the insured." *Gaughan*, 203 W.Va. at 370, n. 17, 508 S.E.2d 75. Here, it is beyond dispute that Plaintiffs and Defendant were always adversaries and that none of the claim file at issue was created for Plaintiffs benefit.

457, 465–66, 583 S.E.2d 80 (2003) (privileged communications by doctor to law firm representing him in medical malpractice action remained privileged in unfair settlement practices action by estate of deceased patient against doctor's medical malpractice insurer, even though such statements were repeated by law firm to the insurer); *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 589 (S.D.W.Va.2002) ("The work product immunity and attorney-client privilege are not waived by exchange of documents and information between persons with common interests in the subject matter.").

■ Here, Defendant seeks to withhold from production numerous documents on the basis of attorney-client privilege. These documents consist mainly of communications between the underlying defendants (the "insured"), claims handlers and employees of Defendant Scottsdale Insurance Company (the "insurer"), and the attorneys hired by Defendant to represent the insured in the underlying litigation. Most of the documents are emails between the insurer and the attorneys summarizing the underlying litigation and answering various legal questions. Defendant contends that these documents are protected by the insured's attorney-client privilege because all of the parties contemplated an attorney-client relationship during the course of the underlying litigation, the insured and insurer sought counsel from the attorneys on a variety of issues during the underlying case, and the parties intended that the communications be confidential. Defendant also asserts its own quasi attorney-client privilege pursuant to *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 370 n. 17, 508 S.E.2d 75, 86–87 (1998).

■ Plaintiffs, on the other hand, argue that Defendant does not have standing to raise the attorney-client privilege of the underlying insured, and that, at most, Defendant can assert its own quasi attorney-client privilege to protect the documents. However, the case cited by Plaintiffs' for this proposition, *Kowalski v. Tesmer*, 543 U.S. 125, 134, 125 S.Ct. 564, 570, 160 L.Ed.2d 519 (2004), is a case about third-party standing to bring a claim, and not about who can assert the attorney-client privilege. Plaintiffs cite no cases holding that an insurance company may not assert the insured's attorney-client privilege for documents in an insured's claim file. *Cf. Medical Assurance*, 213 W.Va. at 465–67, 583 S.E.2d 80 (holding that an insurance company could assert its insured's attorney-client privilege in a third-party bad-faith claim and discussing the inapplicability of the quasi attorney-client privilege to the facts of the case).

■ Plaintiffs' argument also displays a misunderstanding of the quasi attorney-client privilege first articulated by the WVSCA in *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 370 n. 17, 508 S.E.2d 75, 86–87 (1998). In *Gaughan*, which was a third-party bad-faith action, the plaintiff sought discovery from the defendant insurance company of the insured's claim file from the underlying action. The insured, who was the owner of the privilege, waived the privilege so that plaintiff could obtain discovery of the documents. Notwithstanding the release by the insured, the insurance company withheld numerous documents on the basis that the documents were protected by the insured's attorney-client privilege. After the state circuit court ordered production of the documents, the insurance company sought a writ of prohibition from the West Virginia Supreme Court of Appeals. The Court unambiguously rejected the minority view on the issue of whether the insurer could raise attorney-client privilege as to

documents in its insured's claim file, stating:

> We do not hesitate in rejecting the minority approach to the issue of whether an insurer has standing to invoke the attorney-client privilege and work product rule in an attempt to prevent disclosure of the contents of an insured's file in a third-party bad faith action. The minority position is unsound. It seriously undermines the relationship between an insured and insurer. By overemphasizing a party's right to obtain disclosure of evidence to prove a third party claim of bad faith, the minority neglects the importance of "full and frank consultation between a client and a legal advisor [without] the fear of compelled disclosure of information."

*Id.* at 371, 508 S.E.2d 75 (quoting *State ex rel. USF & G v. Canady,* 194 W.Va. at 438, 460 S.E.2d 677). However, the Court also acknowledged that where an insurance company hires an attorney to represent its insured in the underlying litigation, the privilege ultimately belongs to the client and not to the insurance company. Therefore, because the client in *Gaughan* had waived the privilege, technically, the insurance company had no privilege to assert. On these unique facts, the Court created a quasi attorney-client privilege over documents in an insured's claim file that would otherwise be privileged as between the insured and the defense attorney, but which were no longer protected because the insured waived the privilege.[10] The Court held "that in a third-party bad faith action where an insured has signed a release of his/her claim file to a third-party litigant, an insurer may raise a quasi attorney-client privilege to communication in the insured's claim file. The quasi attorney-client privilege belongs to the insurer,

not the insured, and may be waived only by the insurer."

Moreover, in *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* 213 W.Va. 457, 465–66, 583 S.E.2d 80 (2003), the Court expressly rejected a similar argument that *Gaughan* stands for the proposition that an insurance company may only raise the less restrictive quasi attorney-client privilege to protect communications in its claim files between its insured and the insured's attorney. In *Medical Assurance,* a third-party bad faith claim, the plaintiff sought disclosure of communications between the insured, the law firm hired by the insurance company to represent the insured in the underlying litigation, and the claims handlers handling the underlying claim. The defendant insurance company asserted the insured's attorney-client privilege in resisting discovery of the privileged documents. The Court expressly held that the insurance company could assert the insured's attorney-client privilege because the insured had not signed a release waiving the privilege, and the privileged communications between the insured and the insured's defense attorneys "remain privileged even if shared with [the insured's] liability insurer." *Id.* at 465–66, 583 S.E.2d 80. The Court also distinguished *Gaughan* and rejected the plaintiff's argument that the insurance company could only assert the quasi attorney-client privilege as to the documents, explaining:

> Respondent's efforts to apply *Gaughan* as a fallback position are actually misguided. In *Gaughan,* the insured executed a release which allowed the plaintiff to have access to the insured's claim file. Because the claim file was created for the insured, the insured could waive all privileges attached to the claim file-

---

**10.** The Court specifically noted that its opinion "does not address the issue of a third-party seeking the claim file of an insured who has not executed such a release."

which was done by the release that was executed. Under this unique set of facts, it became necessary to provide the insurer with some protection against disclosure of privileged information in the claim file, because the insured had waived the attorney-client privilege by authorizing a third party to have access to the claim file. In providing the insurer some protection, we created a quasi privilege which could be penetrated upon a showing of compelling need. *In the instant case, the insured has not authorized release of his claim file to Respondent. Consequently, there has been no waiver of the attorney-client privilege by the insured. Since there has been no waiver in the case, the attorney-client privilege is fully in effect.* As we indicate in the body of this opinion, this Court will not break with centuries of precedent, to create an exception to the common law attorney-client privilege, by applying Gaughan's fact specific balancing test.

*Id.* at 465–66, 583 S.E.2d 80 (emphasis added).

 Here, as in *Medical Assurance of West Virginia, Inc.*, the underlying defendants have not given Plaintiffs access to their claim file. Consequently,

"the attorney-client privilege is fully in effect," and Defendant has no reason to resort to the less restrictive [11] quasi attorney-client privilege in order to withhold privileged communications between the underlying defendants and the underlying defense attorneys in the claim file. *Medical Assurance*, 213 W.Va. at 468 n. 9, 583 S.E.2d 80; *see also Hager v. Graham*, 267 F.R.D. 486, 495 (N.D.W.Va.2010) ("Accordingly, if the Court in *Gaughan* allowed the insurer to assert a privilege for documents for which the injured party had obtained a release from the insured, there is no question that the West Virginia Court would allow Defendant to assert a privilege for documents, [for] which Plaintiffs had not obtained a release."). Accordingly, any documents in the claim file which reflect privileged communications between the underlying insureds and their attorneys, even if shared with Defendant's adjusters, are privileged. *U.S. Fidelity and Guar. Co.*, 194 W.Va. at 441, 460 S.E.2d 677 (recognizing that "the attorney-client privilege protects the substance of communications and, thus, it extends beyond the attorney to others who, at the attorney's direction, are aware of confidential information") (internal quotation omitted).[12]

11. Unlike the traditional attorney-client privilege, which is absolute, a third-party may obtain documents protected by the quasi attorney-client privilege by showing a compelling need for the materials. "To satisfy the quasi attorney-client privilege compelling need test, the third-party must show that (1) the specifically requested protected communication cannot reasonably be obtained elsewhere and (2) that the specifically requested protected communication could reasonably be interpreted by the fact finder as tending to prove an element of the bad faith cause of action or (3) that the specifically requested protected communication could reasonably be used to lead to the discovery of facts that tend to prove an element of the bad faith cause of action. Any protected communication for

which the third-party satisfies the quasi attorney-client privilege compelling need test must be produced to the third-party." *Gaughan*, 203 W.Va. at 374, 508 S.E.2d 75.

12. Even if the quasi attorney-client privilege attached in this case, Plaintiffs are incorrect that all documents created prior to May 10, 2012, would thereby be discoverable under *Gaughan*. Plaintiffs correctly note that, under *Gaughan*, "all communications in an insured's claim file that were generated prior to the filing date of a third-party's underlying complaint against the insured are not protected by the quasi attorney-client privilege." Thus, assuming only the quasi attorney-client privilege applies here, under *Gaughan*, Defendant could not raise the quasi attorney client

■ However, the Court does not agree with Defendant that all communications between the underlying defense attorneys and Defendant's claims .handlers are privileged. The Court notes that the defense attorneys hired by Defendant represented the underlying defendants, and not Defendant, in the underlying litigation. *Gaughan*, 203 W.Va. at 372, 508 S.E.2d 75 (concluding that a defense attorney represents only the insured, and not the insurer that is paying the defense attorney's fee). Defendant's contention that it may claim its own attorney-client privilege with respect to otherwise unprivileged communications with defense counsel "artificially clothes [Defendant] with the attorney-client privilege." *Id.* Accordingly, the Court finds that communications between the defense attorneys and the claims adjusters that do not relate privileged information obtained from the underlying defendants do not implicate Defendant's attorney-client privilege, and are therefore discoverable (if not otherwise protected as work-product, as discussed below). *See, e.g., Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 3644817 (W.D.Ky. Aug. 24, 2012).

### b. Work Product Protection

■ The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). The party asserting the applicability of the work-product doctrine must show "(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W.Va.2000) (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C.1993)). Unlike files generated while investigating whether to deny a first-party claim, which are generally not considered to have been prepared in anticipation of litigation, insurance claim files generated in relation to investigating and defending against third-party claims are generally considered work-product because they were clearly prepared for the purposes of the underlying litigation, rather than in the insurer's ordinary course of business. *See, e.g., Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 332 (N.D.W.Va.2006) (all documents generated

---

privilege for any documents generated prior to June 1, 2010, the filing date of Plaintiffs' underlying complaint. Here, the first document for which Defendant asserts attorney-client privilege is dated June 11, 2010, after the date that Plaintiffs filed the underlying litigation. Thus, applying *Gaughan*, and assuming Defendant can only assert the quasi attorney-client privilege, all of the withheld documents were generated after the filing date of the underlying complaint and are protected by the quasi attorney-client privilege. However, despite the clear language of Gaughan, Plaintiffs inexplicably assert that "translating Gaughan to this context, there operates a presumptive right to documents generated prior to the suit at bar, despite a general 'attorney client' privilege claim." (emphasis added). Similarly, in their reply brief, Plaintiffs contend that "even if this were analogized to a third-party action, all communications in an insured's claim file that were generated prior to the filing date of a third-party's complaint against the insured [here, by analogy, the complaint against the insurance carrier] are not protected by the quasi attorney-client privilege." Thus, Plaintiffs contend that the quasi attorney client privilege does not apply to any documents generated before May 10, 2012, the date they filed the instant complaint. Plaintiffs' argument is contrary to the plain language of Gaughan and the Court finds it unpersuasive.

after insurer was on notice that third-party intended to sue its insured were prepared in anticipation of litigation or for trial); *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653, 660 n. 1 (M.D.N.C. 1995) (noting that, unlike the claim file generated when an insurer investigates a first-party claim, when an insurer is investigating a third-party claim, "litigation may be anticipated very early on in the investigation"). Here, the entire claim file was generated after Defendant received notice of the underlying lawsuit against its insured, so the documents within the file generally qualify as work product. Moreover, the fact that the claim-file documents were created for the underlying litigation, and not for the instant case, is of no consequence because documents do not lose their work-product protection in subsequent litigation. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484 (4th Cir.1973) (holding that "upon the termination of litigation the work product documents prepared incident thereto [do not] lose the qualified immunity extended to them under Rule 26(b)(3), Federal Rules of Civil Procedure, and [do not] become freely discoverable in subsequent ... litigation").[13] Plaintiffs do not dispute that the documents qualify for work-product protection; rather, they contend that the protection does not apply in this case because of the nature of the claims.

■■■ Unlike the attorney-client privilege, work product protection is not absolute, and otherwise protected work-product may be discoverable in some cir-

cumstances. However, the showing required to justify the discovery of work-product materials depends on whether the materials are fact work product or opinion work product. Fact work product is discoverable if "the party shows that it has substantial need for the materials to prepare·its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3). "This burden is a difficult one and is satisfied only in rare situations, such as those involving witness unavailability." *Bartlett v. State Farm Mut. Auto. Ins.*, 206 F.R.D. 623, 628 (S.D.Ind.2002). However, "[w]ork product that includes the mental impressions, conclusions,˙opinions or legal theories of an attorney or other representative of a party concerning the litigation receives even greater protection." *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 332 (N.D.W.Va.2006). "[U]nlike ordinary work product, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship ... [O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Doe*, 662 F.2d 1073, 1080 (4th Cir.1981) (internal citations omitted).

■■■ Plaintiffs contend that they are entitled to review the claim file because of the nature of the allegations in a *Michael* action. They very generally assert that they have a substantial need for all documents evidencing how Defendant charac-

---

13. Of course, courts have not extended this rationale to subsequent litigation brought by the client for whose benefit the work product was created in the underlying litigation. *See Clark v. Milam*, 847 F.Supp. 424, 426 (S.D.W.Va.1994) (collecting cases). Thus, in a situation where the interests of the insurer and the insured were initially aligned in the underlying litigation, most courts hold that the portion of the claim file generated before the parties' interests diverged is discoverable *by the insured* in a subsequent action against the insurer. This is not such a case because ·Plaintiffs and Defendant never had a common interest and were adversaries from the beginning of the claim.

terized and analyzed the underlying claim and litigation because they cannot prove Defendant violated the WVHRA otherwise.[14] There is some authority for the proposition that the nature of the allegations in third-party insurance actions gives rise to a "substantial need" for the *fact work-product* in the underlying claim file. *See, e.g. Camacho v. Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 700 (N.D.Ga.2012) (ordering production of fact work-product because "a plaintiff's need for the information in the insurance company's claim file in a third party bad faith claim such as this one is substantial·because the documents in the file are often the only reliable indication of whether the insurance company acted in bad faith," but allowing the insurance company to "redact the mental impressions, conclusions, opinions, or legal theories of counsel and the insurance representatives handling the ... underlying damage claims from the documents"). However, other courts examining the issue

reject the idea that a plaintiff alleging bad faith or unfair settlement practices *necessarily* has a substantial need for claim file materials, especially when the information is otherwise discoverable. *See, e.g., Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 135 (S.D.Ga.1982) (holding that the plaintiff could not show undue hardship in obtaining the substantial equivalent of the claims file, because the plaintiff could depose insurance company employees about their actions and opinions); *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653 (M.D.N.C. 1995) ("While arguably it may be more difficult to prove a claim of bad faith failure to settle without examining an insurance company's claims file, that does not mean it is impossible.").[15]

◼ Here, Plaintiffs very generally assert that they are entitled to all of the documents withheld as work-product because they have a substantial need for the documents and they cannot obtain the information contained therein by other

---

14. Plaintiffs do not distinguish between fact work product and opinion work product in asserting a substantial need for the protected documents; however, they argue in their reply briefs that the "at-issue" exception to opinion work product protection applies in this case, which is discussed below.

15. Some courts allow plaintiffs in third-party insurance actions to discover all fact and opinion work-product relating to the underlying litigation because allegations of bad faith or unfair settlement practices necessarily require an investigation into the strategies, mental impressions, and opinions of the insurer's representatives handling the claim. *See, e.g. Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992) (noting that "unless the information is available elsewhere," a third-party plaintiff suing an insurer for bad faith in the settlement process "may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim"). The Court finds this line of authority unpersuasive because it essentially applies a heightened version of the substantial need test to opinion

work product, a practice explicitly rejected by the Fourth Circuit Court of Appeals. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir.1974) ("In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of the term 'shall' as opposed to 'may.' "); *In re Doe*, 662 F.2d 1073, 1080 (4th Cir.1981) ("[U]nlike ordinary work product, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship ... [O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."). For the same reasons, the Court rejects Plaintiffs' contention that the nature of the allegations in an insurance action necessarily puts the opinion work product of Defendant's representatives "at-issue," which is discussed more fully below.

means. However, Plaintiffs were involved in all aspects of the underlying litigation and presumably have access to the same facts about the underlying claim, the status of the litigation, and the progress of the settlement negotiations that they now claim they cannot obtain except by examining the underlying work-product. Clearly then, they cannot establish substantial need and inability to otherwise obtain the information. Plaintiffs' argument fails to recognize that even when particular documents are protected as work-product, the facts underlying the documents are not. Thus, Plaintiffs can thoroughly question witnesses about the facts contained in the work-product reports, including the actual content of statements in the report. *See, e.g., Suggs v. Whitaker,* 152 F.R.D. 501, 507 (M.D.N.C.1993) ("Before claiming an inability to obtain the substantial equivalent of work product documents without undue hardship, a party can be required to take a deposition of a witness."). The Court appreciates that Plaintiffs' case would be must easier to prove if it could simply examine every document in the underlying claim file. However, a blanket assertion that the documents are needed to show Defendant's bad faith and discrim

inatory intent is simply not sufficient to overcome work-product protection.

### c. At–Issue Waiver

▮ Finally, Plaintiffs assert that both the attorney-client privilege and the work-product doctrine have been waived in this case because "the documents withheld relate directly to the central issue in the case, namely whether Defendant discharged its duty to evaluate the underlying case in good faith and without consideration of race." Plaintiffs conflate the implied "at-issue" waiver of the attorney-client privilege with the "at-issue" waiver of opinion work-product protection, even though the concepts are distinct.[16] The main difference between them is that in order to impliedly waive the attorney-client privilege, the party asserting the privilege must take some affirmative action to place its attorney's advice at issue, whereas some courts hold that opinion work-product may be discoverable whenever that opinion is directly at issue regardless of who inserted the information into the case. For the following reasons, the Court finds that no implied waiver has taken place in this case because Defendant

---

**16.** Plaintiffs' treatment of the holding in *Morrow v. Brown, Todd, & Heyburn,* 957 S.W.2d 722, 725 (Ky.1997), is instructive. In *Morrow,* the plaintiff alleged that the defendant attorney lacked probable cause to bring an underlying malpractice action. The plaintiff sought the defendant's case file for the underlying litigation, and the defendant claimed that the file was protected as work-product. The court held that the "at-issue" exception to the work-product doctrine applied to the case file because the activities of the defendant and his opinions about the underlying litigation were directly at issue in the malicious prosecution claim. Plaintiffs acknowledge that the case applies specifically to work-product, but then incorrectly claim that it also applies "by implication to attorney-client at issue waiver." The Court disagrees with this contention. The attorney-client privilege is not

waived unless the holder of the privilege affirmatively places the advice of his counsel at issue. In other words, there is no comparable "at-issue" exception to the attorney-client privilege that applies regardless of who places the advice at issue. Certainly, if the defendant attorney in *Morrow* had consulted an attorney and revealed his thoughts and opinions about the validity of the underlying litigation, those communications would not be discoverable simply because they contain "at-issue" information; rather, they would only be discoverable if the defendant attorney affirmatively placed the advice of his attorney at issue by raising an advice of counsel defense, for example. Clearly then, the two concepts are not interchangeable, and the implied waiver of one does not automatically result in the implied waiver of the other.

has not affirmatively placed advice of counsel into the case, nor is this a cases where counsels' opinions are directly at-issue.

█ A party is treated as having waived the attorney-client privilege if: "(1) the assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). Thus, a defendant can waive the privilege by asserting reliance on the advice of counsel as an affirmative defense, thereby placing that advice directly at issue. However, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994).

█ Plaintiffs assert that by denying it violated the WVHRA in its settlement practices, Defendant placed its attorneys' advice at issue, thereby waiving the attorney-client privilege as to every document in the claim file. However, Defendant has not raised an affirmative defense of advice of counsel. If merely denying the allegations in a complaint waived the attorney-client privilege, the privilege would be moot. Moreover, as noted above, the only privileged documents in the claim file are those involving communications between the underlying defendants and their defense attorneys. It is the actual content of the privileged communication that must be at issue for the privilege to give way, and, clearly, the underlying defense attorneys' advice to the underlying defendants has not been placed at issue in this case.

█ Plaintiffs also contend that the privilege is waived as to certain categories of documents because they concern issues central to their case. For example, Plaintiffs assert that because they allege that the underlying defendants and Defendant used race in making settlement decisions, all documents mentioning race are discoverable. Additionally, Plaintiffs argue that all attorney-client privileged documents wherein the parties characterized the underlying case and formulated case strategy are discoverable "because of the centrality of how the underlying defendants, Scottsdale, and insurance counsel characterized the case ... or strategized." Similarly, Plaintiffs contend that all communications referencing mediation and settlement are discoverable because "they would show how Scottsdale evaluated this case and permit Plaintiff to develop evidence that race played a role in that evaluation." Plaintiffs arguments are essentially that the information they seek is highly relevant to their claims. However, the Court cannot pierce the attorney-client privilege simply because the information may be relevant to a party's claims. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415–16 (D.Del.1992) ("The Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant.... It is always possible that the client's motive or conduct was influenced by something his attorney told him, but compelling the production cannot be justified solely as a means to check the insured's statements."); *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts

to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."). The documents are certainly relevant to the issues Plaintiffs have injected into the case by virtue of its own allegations, however, the only issue here is whether Defendant affirmatively placed the privileged communications at-issue in this case, and the Court finds that it did not. Accordingly, the Court finds that to the extent is applies to documents withheld from the claim file, the attorney-client privilege has not been impliedly waived by Defendant.

■ As for work product, Plaintiffs assert that the implied "at-issue" exception to the immunity of opinion work-product applies in this case because the opinions of counsel and Defendant's adjusters are directly at issue. As noted above, in this Circuit, opinion work product enjoys almost absolute immunity from discovery, and an indirect waiver of is protection will only be found in extreme circumstances. *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988) ("While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such opinion work product is not subject to discovery.").

■ Plaintiffs argue that because Defendant's settlement decisions necessarily involve the "reaction of adjusters to the actions and statements of counsel," the opinions of counsel are at issue here. The Court finds this reasoning unpersuasive. The opinion work product of the underlying defense attorneys, which consists exclusively of defense counsels' mental impressions and strategies about the underlying litigation, is not at issue in the instant action, even though it may have informed Defendant's evaluation of the underlying claim. Defendant and the underlying defendants, not the underlying defense attorneys, made the ultimate decisions about settlement and litigation that form the basis of the instant action. That Defendant or the underlying defendants may have based their decisions on the opinions and assessments of attorneys clearly does not put those opinions at issue. Nor does Defendant's denial that it violated the WVHRA and assertion that its actions regarding settlement were lawful place the opinions of counsel at issue. It is only when a defendant attempts to avoid liability by justifying its challenged actions because it relied on counsel's advice and opinions that such a waiver occurs. No such advice of counsel defense is present in this case.

■ The Court acknowledges that some claims, by their very nature, necessarily put the opinions of counsel directly at issue such that the work product immunity must give way to allow for discovery of those opinions. *See, e.g., Morrow v. Brown, Todd, & Heyburn*, 957 S.W.2d 722, 725 (Ky.1997) (malicious prosecution action against attorney necessarily put in issue the opinions of the attorney defendant who initiated the underlying lawsuit). However, courts in this Circuit generally reject the contention that an action against an insurance company is *necessarily* such a claim because the conduct and decisions at issue are those of the insurer, rather than those of the attorneys analyzing the claim upon which the agents may have based their ultimate decisions. *See Mordesovitch v. Westfield Ins. Co.*, 244 F.Supp.2d 636, 647 (S.D.W.Va.2003) (noting that while it may be advantageous to the plaintiff to have access to every document in the claims file at issue, there are other ways through which the plaintiff may prove his case including by deposing counsel and the claims adjuster who created the work-product). Plaintiffs try very

hard to distinguish the allegations in a Michael action from those in other types of third-party insurance claims, and contend that because they allege that Defendant used race as a factor in valuing their claim and in making settlement decisions, the opinions upon which Defendant based these decisions are discoverable. However, in other third-party insurance actions, where no such wholesale waiver of work product immunity is justified, the insurer's conduct and decisions are no less "at-issue," than in a Michael action. Accordingly, protected work product is no more discoverable here than it would be in other similar cases.

### d. The Claim File

■ Applying the foregoing, the undersigned conducted an *in camera* review of the documents withheld on the basis of attorney-client privilege and work-product doctrine. The first, and largest, category of documents consists of communications between the underlying defendants and Defendant's claims handlers, or communications between the underlying defendants' attorneys and the claims handlers. To the extent these communications consist of information passing from the underlying defendants, either directly or indirectly, to Defendant's claims handlers, for the purpose of coordinating the legal response to the underlying litigation, they are protected by the attorney-client privilege. Additionally, many of these communications can also be characterized as the work product of the underlying defendants' attorneys because they summarize the attorneys' factual investigations, outline the attorneys' legal strategies, and summarize various depositions and in-court proceedings to the claims handlers. However, to the extent that these documents merely consist of benign communications among the parties that contain neither statements to or from the underlying defendants nor opinions and legal strategies about the underlying litigation, they are not protected by the attorney-client privilege or the work-product doctrine, and their disclosure is proper. *See, e.g., Republican Party of N. Carolina v. Martin,* 136 F.R.D. 421, 430 (E.D.N.C. 1991) ("[D]ocuments which contain only compilations of facts, and are devoid of any legal analysis (and, apparently, any legal significance) ... are ... unprotected by the work product doctrine.").

■ The next category of documents consists of litigation and claim summary reports prepared by the underlying defendants' attorneys or by Defendant's claims handlers. These reports, which include detailed factual summaries, litigation strategies, and mental impressions regarding the underlying claim and litigation are clearly work-product and need not be disclosed. The final category of documents includes the log files, which are the detailed notes of Defendant's claim handlers during the pendency of Plaintiff's underlying claim. To the extent the entries in these logs include otherwise privileged information from the underlying defendants, they are privileged. Additionally, many of the entries are protected work-product.

Synthesizing the foregoing, the Court finds as follows:

1. The following documents qualify for both attorney-client privilege and work-product protection, and need not be produced: Bates 78–90, Bates 148–150, Bates 183–194, Bates 198–235, Bates 236–240, Bates 668–671, Bates 676–716, Bates 803–805, Bates 836, Bates 885–891, Bates 906–913, Bates 919–923, Bates 935–939, Bates 951–953, Bates 957–961, Bates 981–983, Bates 1074–1076, Bates 1082–1098, Bates 1099–1101, Bates 1102–1114, Bates 1142–1145, Bates 1149–1153, Bates 1171–1176,

Bates 1210–1213, Bates 1214–1225, Bates 1300–1305, Bates 1306–1307, Bates 1309–1311, Bates 1336–1339,[17] Bates 1710–1721, Bates 1759–1784, Bates 1793–1795, Bates 1808–1811, Bates 1819–1839, Bates 2154, Bates 2502–2503, Bates 2715–2719, Bates 2724–2726, Bates 2731–2733, Bates 2734–2735, Bates 2737–2739.

2. The following documents, for which Defendant asserted both attorney-client privilege and work-product protection, are not privileged, but they do qualify for work-product protection, and need not be produced: Bates 92–94, Bates 244–247, Bates 863–864, Bates 904–905, Bates 940–942, Bates 991–995, Bates 1146–1148, Bates 1154–1158, Bates 1159–1163, Bates 1791–1792, Bates 2745–2747.

3. The following documents, for which Defendant asserted only attorney-client privilege, are privileged, and need not be produced: Bates 115–119, Bates 165–169, Bates 1295–1296.

4. The following documents, for which Defendant asserted only work-product protection, are protected work-product, and need not be produced: Bates 26–33, Bates 63–64, Bates 104–114; Bates 1814–1815, Bates 1817–1818, Bates 1991, Bates 1966–1990, Bates 1995–1996, Bates 2027–2028, Bates 2029, Bates 2030–2031, Bates 2034–2035, Bates 2036.

5. The following documents, for which Defendant asserted both attorney-client privilege and work product protection, are not privileged because they are routine communications between the attorneys and the claims handlers relating to scheduling and other innocuous status updates, nor do they contain protected

work-product, and they must be produced: Bates 1, Bates 2, Bates 3, Bates 62, Bates 241–243, Bates 248, Bates 802, Bates 894–895, Bates 914–915, Bates 977–980, Bates 1068–1069, Bates 1165–1166, Bates 1191–1192, Bates 1226–1227, Bates 1244–1249, Bates 1284–1287, Bates 1297, Bates 1298–1299, Bates 1308, Bates 1787–1788, Bates 2304–2305, Bates 2691–2692, Bates 2710–2711, Bates 2720–2721, Bates 2722–2723, Bates 2728–2730, Bates 2736, Bates 2740, Bates 2741–2743, Bates 2744, Bates 2748–2749, Bates 2751–2752, Bates 2753.

6. The following documents, for which Defendant asserted only attorney-client privilege, are not privileged because they are routine communications between the attorneys and the claims handlers that contain no privileged communications or because they are communications among Defendant's representatives not involving privileged information or the procurement of legal advice, and they must be produced: Bates 120–123, Bates 176, Bates 195, Bates 196–197, Bates 268–269, Bates 781, Bates 794–796, Bates 797–798, Bates 800–801, Bates 880, Bates 899, Bates 1954, Bates 1962–1963, Bates 1964–1965, Bates 1993–1994, Bates 170–172.

7. Most of the LOG documents are summaries or verbatim recordations of the aforementioned communications, thus, they are protected work product and contain privileged communications. However, the following documents must be produced because they do not contain the mental impressions, thoughts, and conclusions of Defendant in evaluating a

---

17. This document is a letter from defense attorney Hall to claims examiner Hoekstra summarizing the litigation preparations and witness interviews. The document was not listed on the privilege log, but was included in the documents provided to the Court for *in camera* review.

legal claim, nor do they include privileged communications: LOG 010, LOG 011. The remainder of the withheld LOG notes need not be produced.

### III. CONCLUSION

Plaintiffs' Motion to Compel (Doc. 70) is **GRANTED IN PART.** Defendant is **ORDERED** to produce non-privileged and non-protected documents, as directed by this Order, within fourteen [14] days of the date of this Order.

Filing of objections does not stay this Order.

Any party may, within fourteen [14] days of this order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in a waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED.**